JOSEPH D. KELSEY *vs.* JOHN REBUZZINI.

Third Judicial District, Bridgeport, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

As related to a subsequent event, a proximate cause is one which, in a natural sequence, unbroken by any new or intervening cause, produces that event, and without which that event would not have occurred. It must be an efficient act of causation separated from its effect by no other act of causation.

Where the original wrongful act becomes injurious only in consequence of the intervention of some distinctly wrongful act or omission of

another, the injury will be imputed to the last wrong as the proximate cause, and not to that which was more remote; provided, however, the negligent acts of the subsequent wrongdoer or wrongdoers are not such as the first or original wrongdoer, possessing ordinary experience and sagacity and acquainted with all the circumstances, ought reasonably to have anticipated.

The plaintiff's cattle passed from the hired land of one *W*, upon which they were pasturing, through an insufficient divisional wire fence which the defendant had undertaken to maintain, to his land, and thence down a stream until they reached land of *C*, an adjoining proprietor, upon which they entered because no sufficient fence had been built across the stream at that point. Whose duty it was to build this fence did not appear. Potatoes growing on this land not far from the stream had been sprayed, for their own protection by *C's* servants, with some poisonous mixture, some of which had been spilled upon the grass between the stream and the potato patch. The cattle cropped this grass and five of them died as a result. In an action to recover damages for their loss, which was alleged to have been caused by the defendant's failure to maintain the divisional wire fence, it was *held* that, assuming the defendant owed the plaintiff the duty of maintaining the divisional fence at the point where the cattle escaped to the defendant's premises, the breach of this duty was not the proximate or legal cause of the loss which befell the plaintiff through the death of his cattle, but their eating poisonous grass upon the lot of *C*, a situation the defendant could not reasonably have anticipated, and for the creation of which the intervening careless conduct of a new wrongdoer was legally responsible.

Argued October 30th—decided December 20th, **1913.**

ACTION to recover damages for the loss of several heifers through the alleged failure or neglect of the defendant to keep a division fence in repair, brought to and tried by the Court of Common Pleas in New Haven County, *Simpson, J.;* facts found and judgment rendered for the plaintiff for $209, and appeal by the defendant. *Error; judgment directed for defendant.*

The defendant and one Woodruff were owners of adjoining tracts of land in Guilford. The boundary line between these tracts was the middle line of a stream known as West River, which flows in a southerly direction. The defendant owned the east tract and

Woodruff the west. The southern boundary line of the two tracts was a continuous line, and one Cobb owned a tract adjacent to both pieces on the south. Through this Cobb land the stream flowed.

The boundary fence between the defendant and Woodruff was built of posts and three strands of wire. From the Cobb lot northerly for a little more than one half the length of the other two lots it was situated on the westerly or Woodruff side of the stream. This portion was by agreement of the parties maintained by Woodruff. Beginning at the termination of this portion of the fence it crossed the stream and continued northerly on the easterly or Rebuzzini side of the stream. This section, pursuant to the agreement referred to, was maintained by the defendant.

On July 16th, 1912, the Woodruff lot, as the defendant well knew, was used for the pasturage of cattle, and eleven heifers belonging to the plaintiff were pastured there for hire.

On the previous day a cow belonging to the defendant had escaped from his land on to Woodruff's. In the effort to drive back the cow two of the defendant's children took down the two upper strands of wire in one of the lengths of fence belonging to the defendant to maintain. They were unable to replace the wire, and so reported to the defendant upon his arrival home that evening. He took no steps to repair the fence until after the occurrences hereinafter related.

On the following day nine of the plaintiff's heifers passed through the fence, at the point where the wires had been torn down, into the defendant's lot. They then turned south along the stream, and finally into it and down it until they reached Cobb's lot, on to which they passed by reason of there being no sufficient fence across the stream at that point.

A portion of Cobb's land lying back some four or five

rods from the stream was cultivated by him, and had corn and potatoes growing upon it, the potatoes being nearest the stream. Some time prior to this day Cobb had caused a poisonous mixture to be sprayed upon the potato vines for their protection. This mixture had been prepared on the west bank of the stream by Cobb's agents, and in mixing it they had spilled some portion of it upon the grass upon the bank of the stream, and also to some extent upon the grass between the place where it was mixed and the potatoes, and in spraying the potatoes some of the mixture also was sprayed upon the grass along the edge of the potatoes.

When the plaintiff's heifers reached Cobb's land they left the stream and passed along the west bank cropping the grass where the poison had been spilled and sprayed, and thus ate some of the poison, from the effects of which five of them died. They ate no potato tops.

The defendant was familiar with the use of poisonous substances for spraying potato vines, but did not know that Cobb's potatoes had been sprayed; nor did he know that any poison had been spilled or sprayed upon the grass. The division fence between the defendant and Woodruff was not a legal fence as Woodruff knew, but he did not know the condition of it as left by the defendant's children.

*Robert C. Stoddard* and *Samuel A. Persky,* for the appellant (defendant).

*George E. Beers,* for the appellee (plaintiff).

PRENTICE, C. J. The plaintiff is not entitled to a judgment against the defendant unless two legal propositions are well founded, to wit: (1) that the defendant owed to him for the protection of his heifers grazing in Woodruff's pasture from the consequences to them

of escape therefrom, the duty of maintaining a sufficient division fence at the point where they made their escape on to the defendant's premises; and (2) that the breach of this duty, arising from the insufficiency of the fence at the point of escape, was the proximate or legal cause of the loss which befell him through the death of his heifers.

The first of these propositions may be assumed without decision, and yet the plaintiff must fail in his action by reason of his failure to support the second.

Of a proximate cause as related to a subsequent event, we have said that it was one "which, in a natural sequence, unbroken by any new and intervening cause, produces that event, and without which that event would not have occurred. It must be an efficient act of causation separated from its effect by no other act of causation." *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888; *Swayne* v. *Connecticut Co.*, 86 Conn. 439, 445, 85 Atl. 634, 737. The acceptance of this not unusual definition, however, does not by any means close the door of debate as to what it signifies in its practical application to varying conditions. There remain, for instance, the questions as to what is meant by "natural sequence" and what by a "new and intervening cause" breaking the sequence. Fortunately the exigencies of this case do not call upon us to enter into the discussion which has been invoked by attempts to arrive at a comprehensive answer to these questions. The facts, as found, present a situation which does not lie in fairly debatable ground.

The immediate cause of the death of the plaintiff's heifers was their cropping poisoned grass upon the Cobb lot. The insufficient length of fence through which they passed to the defendant's premises did not harm them. It did not set in motion any agency of destruction which before it ceased to operate, either directly or through

the interposition of some other agency set in motion by it, caused the death of the heifers. It brought about a new condition or situation rather. *Smithwick* v. *Hall & Upson Co.*, 59 Conn. 261, 269, 21 Atl. 924. This new situation was not one which exposed the cattle to new danger except as the intervention of some person's wrongful conduct might have created or might create such danger. Without such intervention they would, as far as appears, have been as safe upon the defendant's land as upon Woodruff's. Such intervention there was. Either Woodruff or Cobb or the defendant, we know not which, had failed to maintain a sufficient fence across the course of the stream where it entered upon Cobb's land. As a consequence the heifers passed upon that land. Here they would still have been exposed to no hazard, had not some one carelessly spilled poison upon the grass there. But it was there, and they were there, and they ate of it and died.

We thus have a condition of things where the defendant's original wrong in neglecting to maintain the division fence between him and Woodruff led to harmful results, solely in consequence of the intervention of the acts or omissions of other parties, unrelated to defendant's wrong save in the sequence of events producing new situations, in the final one of which the careless conduct of a new wrongdoer came into deadly operation.

The rule laid down by Cooley is that in such cases the injury will be imputed to the last wrongful act as the proximate cause, and not to that which was more remote. "If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those

which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." 1 Cooley on Torts (3d Ed.) 101. This rule is doubtless too broadly stated, and needs qualification in this that the negligent action of the first party in fault will be regarded as the proximate cause whenever the negligent act or acts of the subsequent wrongdoer or wrongdoers are such as the original wrongdoer, as a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably have anticipated. "If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another. If it could not have been thus anticipated, then the intervening negligent person alone is responsible." 1 Shearman & Redfield on Negligence (6th Ed.) § 34; *Lane* v. *Atlantic Works*, 111 Mass. 136.

In the present case the defendant doubtless was aware of the condition of the fence along the Cobb line, and might have anticipated the passage of cattle from his land through it. But he had no knowledge of poisoned grazing in the Cobb lot, and however experienced or sagacious he might have been, could not have anticipated that some person might aimlessly have scattered poison about upon the grass there. That incident was one so entirely out of the range of human experience that he had no occasion to take it into his calculations, and the fault involved in it as an efficient cause of the death of the heifers was so distinct, independent, and complete that the defendant's fault in not maintaining the division fence between him and

Woodruff in a sufficient condition cannot be regarded as a cause of it. The defendant's failure in the maintenance of the fence did not stand to it in the relation of *causa causans*. "'Cause' and 'consequence' are correlative terms. One implies the other. When an event is followed in natural sequence by a result it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the cause of the result." *Monroe* v. *Hartford Street Ry. Co.*, 76 Conn. 201, 207, 56 Atl. 498. The natural sequence of consequences flowing from the escape of the cattle from their pasture was effectually broken, and a new, distinct, and independent cause productive of their death introduced into the situation when the poisoned grazing was encountered.

There is error, the judgment is reversed and the cause remanded for the rendition of judgment for the defendant.

In this opinion the other judges concurred.