STROUD & COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104012.   Promulgated December 2, 1941.

*Thomas R. White, Esq.*, and *Bernard V. Lentz, Esq.*, for the petitioner.

*Eugene G. Smith, Esq.*, for the respondent.

OPINION.

Van Fossan: The issue as here drawn is whether or not a valuable consideration passed from the New Jersey company to the Delaware company for the transfer of the insurance' policies on the life of Edward B. Robinette. If it did, the amounts received by the petitioner, as successor to the New Jersey company, by reason of the death of Robinette, less the actual value of the consideration and the amount of the premiums and other sums subsequently paid by the transferee, are includible in income. Section 22 (b) (1) and (2) of the Revenue Act of 1936 [1] governs the situation.

The petitioner concedes that if the bill of sale of June 1, 1932, were to be considered alone, the Delaware company voluntarily transferred its interest in the insurance policies to the New Jersey company for the stock of the latter company, a valuable consideration. However, it assumes the position that the New Jersey company actually had no interest in the policies, but that it merely held them under the dictation of the creditor banks in order to effect the payment of the Delaware company's debts. It then argues that in reality the policies continued to be held by and for the Delaware company under the control of its creditors and that hence there was no real transfer, but that only a sort of trust relationship was created under which the entire benefit of the policies would inure to the Delaware company.

The petitioner's view of the situation is not complete. It ignores the dual purpose of the reorganization. True, one object was to pay the Delaware company's debts, if possible. But that could have been accomplished by a receivership or other form of liquidation. The other and more important purpose was to enable Stroud & Co. to continue its business under its own name and with the advantages of its business reputation and good will.

The New Jersey company undertook to justify that business purpose. In fact, it is apparent that the creditor banks relied on it and its successful operation to assist materially in the ultimate payment of the Delaware company debts. A careful inspection of the reorganization agreement shows that the New Jersey company

---

[1] SEC. 22. GROSS INCOME.

    \*      \*      \*      \*      \*      \*      \*

(b) Exclusions from Gross Income.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

(1) Life Insurance.—Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

(2) Annuities, etc.—\* \* \* In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) of this paragraph.

and its officers were meticulously circumscribed in their functions, salaries, and activities, to accomplish that end. But that was the price which the New Jersey company and its officers and stockholders had to pay in order to carry on the Stroud & Co. business. Their vital concern was to weather the financial storm and to emerge therefrom unencumbered by the weight of the frozen assets which the Delaware company retained.

We note that only four of the seven Delaware company stockholders became the sole stockholders in the New Jersey company. They were willing to gamble on the eventual rehabilitation of the enterprise through the reorganization plan, and the creditor banks were also willing to chance the payment of the Delaware company obligations to them by such means. In keeping with those motives and purposes the insurance policies were included in the transfer of assets from the Delaware company to the New Jersey company. At the time of their transfer they were potentially of considerable value.

If Robinette had died before all the Delaware company debts had been paid, the proceeds of the insurance policies would have been applied as set forth in our findings of fact. If only a portion of them had been required to purchase the remaining assets of the Delaware company or to satisfy its debts, the rest of the proceeds would have gone to the sole stockholders of the New Jersey company in proportion to their stock ownership. Thus, a very real benefit would have been gained by the New Jersey company and its stockholders. That outcome was contemplated at the time of transfer and certainly was of value to the New Jersey company.

The fact that the New Jersey company paid the premiums on the policies for five years also is indicative that it considered them both potential and actual valuable assets. We find nothing in the record showing that the New Jersey company was compelled to pay the premiums. It is stipulated that the New Jersey company retained an economic interest in Robinette's life. That fact likewise imputed value to the transfer.

A retrospective survey of the events set forth in the findings of fact affords the petitioner no support. The fortuitous circumstance that the Delaware company's debts were paid prior to Robinette's death, enabling the petitioner's predecessor (New Jersey company) to collect insurance of over $150,000 thereby, confirmed the hope, expectation, and belief of the New Jersey company and its stockholders that the Delaware company would be successfully liquidated.

The provision of the reorganization agreement that the proceeds from the insurance policies were to be used to purchase from the Delaware company assets which would be transferred to the New

Jersey company as contributed surplus furnishes further proof that the consideration for the transfer was valuable.

We conclude, therefore, that while the transfer of the insurance policies may have been for the primary purpose of facilitating the payment of the Delaware company's debts, the direct benefits to the New Jersey company were several and real and a valuable consideration therefor. Certainly petitioner has not proven respondent to be in error in his holding that the transfer of the insurance policies was for a valuable consideration.

The respondent has filed no brief, but has submitted a memorandum of authorities stating that he relies on *King Plow Co.* v. *Commissioner*, 110 Fed. (2d) 649 (affirming memorandum opinion of the Board, June 30, 1939); *Charles E. Lambeth*, 38 B. T. A. 351; and *Alcy Sivyer Hacker*, 36 B. T. A. 659. The *King Plow Co.* case is authority for the general principle that where an insurance policy is acquired with other assets for stock, in a nontaxable reorganization merger, the transfer is for "a valuable consideration." We are of the opinion that here the policies were transferred as a part of the assets for which the stock was given and to that extent the cited case applies.

The petitioner raises the further issue that it may deduct from the proceeds of the insurance policies all premiums paid by its predecessor, regardless of the fact that they may have been allowed as deductions in previous years.

The respondent has added to the net proceeds of the policies, after deducting their cost, the sum of $6,120.64 representing premiums paid by the New Jersey company during 1932 to 1935, inclusive, and also $149.18, so paid by it in 1936. Apparently he seeks to justify his action on the ground that such amounts were claimed and allowed as deductions in previous years.

We find no statutory authority for respondent's action in adding the premiums to petitioner's gross income. Section 22 (b) (2) specifically states that the actual value of the consideration and the amount of premiums and other sums subsequently paid by the transferee shall be exempt under section 22 (b) (1). The premiums here were paid by the transferee (the petitioner's predecessor) and hence serve to increase the exemption.

As we said in *Charles E. Lambeth, supra*, "we are not dealing with the ordinary case but with the proceeds of life insurance contracts in respect of which Congress has seen fit to legislate specifically." We also observed:

The fact that the petitioner might be permitted a deduction in some year by reason of the worthlessness of the corporate stock does not change the situation, for Congress has seen fit to deal specifically with the proceeds of life insurance and we must apply the statute as it is enacted.

In the case at bar no reference is made in the statute to deductions claimed or allowed relating to such "premiums and other sums subsequently paid by the transferee" either during the taxable year or theretofore. The language of the statute is clear and unambiguous. We must apply it as we find it. Therefore, the amount of the premiums aggregating $6,269.82 should be deducted from the $105,220.30, computed by the respondent to be the taxable gain on the life insurance proceeds.

The respondent's motion, made at the hearing, to strike from the record the testimony of Norman Baumm, the petitioner's witness, relating to the discussions and understandings of the parties to the June 9, 1932, agreement prior to its execution is denied. An exception is allowed.

*Decision will be entered under Rule 50.*