**LAREDO BRIDGE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket No. 6354. Promulgated June 5, 1946.

*Wilton H. Wallace, Esq.*, for the petitioner.
*John W. Alexander, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: It is the contention of the petitioner that the loss which it sustained in 1937 by reason of the condemnation of the Mexican end of its bridge by the Mexican Government must be disregarded in determining its excess profits net income for 1937, one of the base years involved in the computation of petitioner's excess profits tax

liability for 1941. Petitioner urges that this adjustment is authorized either as an abnormal deduction within the meaning of section 711 (b) (1) (J) of the Internal Revenue Code, or as a long term capital loss, covered by section 711 (b) (2) of the code.

The applicable provisions of section 711 of the Internal Revenue Code are the following:

(b) TAXABLE YEARS IN BASE PERIOD.—

(1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; * * * the following adjustments shall be made * * *:

(B) Long-Term Gains and Losses.—There shall be excluded long-term capital gains and losses. There shall be excluded the excess of the recognized gains from the sale, exchange, or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property held for more than eighteen months which is of a character which is subject to the allowance for depreciation provided in section 23 (1) over the recognized losses from the sale, exchange, or involuntary conversion of such property. * * *

*     *     *     *     *     *     *

(J) Abnormal Deductions.—Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions—

(i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, * * *

*     *     *     *     *     *     *

(K) Rules for Application of Subparagraphs (H), (I), and (J).—For the purposes of subparagraphs (H), (I), and (J).—

*     *     *     *     *     *     *

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation size, or condition of the business engaged in by the taxpayer.

(2) CAPITAL GAINS AND LOSSES.—For the purposes of this subsection the normal-tax net income and the special-class net income referred to in paragraph (1) shall be computed as if section 23 (g) (2), section 23 (k) (2), and section 117 were part of the revenue law applicable to the taxable year the excess profits net income of which is being computed, with the exception that the net short-term capital loss carry-over provided in subsection (e) of section 117 shall be applicable to net short-term capital losses for taxable years beginning after December 31, 1934. Such exception shall not apply for the purposes of computing the tax under this subsection for any taxable year beginning before January 1, 1941.

Respondent contends that section 711 (b) (1) (J) can not be invoked here, because 711 (b) (1) (B) deals expressly with capital gains and losses and net gains from the disposition of depreciable property, and the question whether the amount may be restored must be decided under the terms of that section alone. Respondent then contends that

the restoration of the item is not authorized by 711 (b) (1) (B), first, because the first sentence deals with capital gains and losses, and depreciable assets are expressly excluded from the definition of capital assets; and because the second sentence authorizes the exclusion of the excess of gains over losses, but makes no provision for the exclusion of the excess of losses over gain.

We find respondent in the position of contending that section 711 (b) (1) (J) is unavailable because the situation falls within 711 (b) (1) (B), but that the situation does not fall within (b) (1) (B).

Petitioner contends that the first sentence of (b) (1) (B) is applicable and that its loss was a long term capital loss and, therefore, must be excluded.

The confusion which surrounds the entire matter requires a careful analysis of the legislation involved, in the light of its history and the intent of Congress in enacting it.

It is true that in 1937 the loss involved here was a long term capital loss under the income tax statute then in effect. Petitioner's income tax return for that year reported the loss now under consideration in the amount of $68,525 and other long term losses in the amount of $1,129 of a character which were then and are now defined as capital losses. The applicable statute permitted those losses to be taken into account to the extent of only $2,000, which was done.

However, in 1938, for the first time, depreciable assets were excluded from the definition of capital assets, and the Internal Revenue Code, which became effective in 1939, also specifically excludes depreciable assets from the definition of capital assets.

Section 711 (b) (1) of the Code provides for the computation of the excess profits net income of a taxpayer for the base years used in the calculation of its average earnings, and defines the excess profits net income for such base year to be the normal tax net income for such year, adjusted as therein required. Section 711 (b) (2) requires the normal tax net income for such year to be computed as if section 117 of the code had been in effect in the base year. To that normal tax net income, as so computed, the adjustments set forth in 711 (b) (1) are then made in order to arrive at the excess profits net income for the base year on a basis comparable to that on which the excess profits net income for the current year is computed.

In the instant case the first step to be undertaken is the computation of petitioner's normal tax net income for 1937, as though section 117 of the code were in effect. This would prevent the loss from the condemnation of the bridge from being treated as a capital loss, since section 117 excludes depreciable property from the classification of capital assets. That loss would therefore be treated in this computation as an ordinary loss. The loss of $1,129 resulting from the sale of stocks and bonds would be treated as a capital loss, however, and, since

it was less than $2,000 in amount and the percentage limitations of section 117 do not apply to corporations, it would be deductible in full.

The figure which results from this computation in accordance with section 117 is the normal tax net income referred to in section 711 (b) (1), which is then subjected to the adjustments required by section 711 (b) (1) (A) through (J).

The first of these is subsection (B), which requires the exclusion from the computation of long term capital gains and losses. Pursuant thereto, we must exclude the only item in the computation relating to capital gains and losses, which is the long term capital loss of $1,129. The next sentence directs the exclusion of the excess of gains over losses from the disposition of depreciable assets. Even if petitioner had had such a net gain, no such item would have appeared in our computation, for the reason that section 117, in the light of which this computation was made, did not, in 1941, provide for special treatment as capital gain of the excess of gains over losses from the sale of depreciable assets. Beginning in 1942, section 117 (j) provided that the excess of gains over losses shall be treated as capital gains, but that, where such gains do not exceed such losses, the gains and losses shall not be considered as capital gains and losses, and the second sentence of section 711 (b) (1) (B) was added to correlate the exclusions with the inclusions. The report numbered 1631 of the Senate Finance Committee on the Revenue Act of 1942, at page 50, specifically states that, where the gains do not exceed the losses from the sale of depreciable property, such gains and losses will be treated as ordinary gains and ordinary losses instead of capital gains and capital losses. The only change effected by the 1942 amendment, therefore, consisted in the special treatment of the excess of gains over losses from such transactions as capital gains. Losses which exceed gains continued to be treated as ordinary losses, and the provision for special treatment of the excess of gains over losses was not intended to and did not preclude the deduction of such losses as ordinary losses under another section of the statute.

By the same token the provision of the code dealing with the subject of capital gains and losses which directs the exclusion of the excess of gains over losses from the computation solely because such excess is treated as a capital gain (see Ways & Means Committee Report 2333, sec. 206) does not mean that the excess of losses over gains, which continue to be ordinary losses and are not given special treatment as capital items, and which, therefore, are not excludible under that section, may not be given appropriate treatment as the ordinary losses which they are, under some other section applicable to ordinary losses.

We think it is abundantly clear from the legislative history of the statute that Congress did not intend to preclude such items as this from consideration under section 711 (b) (1) (j), relating to abnormal deductions. While the committee reports contain no specific reference to a possibility that a loss from the sale of depreciable property which would not be excludible under the language of subsection (B) might, if the loss were abnormal, be disregarded under subsection (J), we do find an analogous reference to an altogether comparable possibility with respect to subsection (G). Subsection (G) allows a credit for dividends received from domestic corporations. It could be argued that, since subsection (g) provides for a credit for dividends from domestic corporations, and makes no reference to dividends received from foreign corporations, Congress did not intend to allow foreign dividends to be excluded from the computation under any other section, just as respondent now argues that, since subsection (B) provides for the exclusion of the excess of gains over losses, and makes no mention of excluding the excess of losses over gains, Congress evidently did not intend that such losses be excluded under any other section.

However, Conference Committee Report No. 3002, Second Revenue Act of 1940, p. 46, par. (5), commented upon the fact that subsection (g) made no provision for a credit for dividends received from foreign corporations, and said: "Such dividends, however, if their receipt .constitutes an abnormality, are entitled to the treatment provided by section 721." (Section 721 is the provision of the statute relating to abnormal receipts, correlative to section 711 (b) (1) (J), relating to abnormal deductions.)

In view of these considerations, we agree with respondent that the deduction for the loss involved here is not to be excluded from the computation by reason of any provision contained in section 711 (b) (1) (B). But, that being true, we do not agree that its exclusion may not be authorized under section 711 (b) (1) (J) if it meets the requirements imposed by that section and section 711 (b) (1) (K) (ii).

Turning, then, to the requirements of section (b) (1) (J) and (b) (1) (K) (ii) of the code, the only question at issue is whether petitioner has established that the abnormality is not a consequence of a change at any time in the type, manner of operation, size, or condition of its business. Respondent makes no contention that the loss was not a deduction of a class abnormal for the petitioner.

Respondent argues that the loss was a result of a change in the size of petitioner's business and, therefore, it is not to be disallowed because of section (b) (1) (K) (ii), while petitioner strenuously

urges the loss was not the consequence, but the cause, of the change in the size of its business. The solution must be found in the meaning of the word "consequence" as used in this section of the statute.

The word is defined in Webster's New International Dictionary, as follows:

* * * That which follows something on which it depends; that which is produced by a cause or ensues from any form of necessary connection or from any set of conditions; a natural or necessary result—contrasted with mere sequence * * * chain of causes and effects; consecution. Act of following something else as a result; relation of an effect to its cause * * *.

Several courts have used the definition contained in *Kelsey* v. *Rebuzzini*, 87 Conn. 556; 89 Atl. 170, 171, as follows:

"Cause" and "consequence" are correlative terms, one implying the other, and when an event is followed in natural sequence by a result it is adapted to produce or aid in producing, that result is a consequence of the event, and the event is the cause of the result.

See also *Monroe* v. *Hartford St. Ry. Co.*, 76 Conn. 201; 56 Atl. 498, 501; *Hill* v. *Day* (Del Super.), 199 Atl. 920, 922; *In re Benson*, 178 Okla. 299; 62 Pac. (2d) 962, 965.

Cyclopedic Law Dictionary, 3d Ed., defines "consequence" as:

* * * That which follows something on which it depends; that which is produced by a cause; connection of cause and effect; that which follows from, or grows out of any act, cause or series of actions; an event or effect produced by some preceding influence, action, act or cause.

The facts before us clearly show that the first event in the sequence of events experienced by petitioner in this connection was the condemnation by the Mexican Government of the Mexican end of the bridge. This condemnation resulted in the loss. It resulted also in a change in the size of petitioner's business, which was cut in half, practically speaking, solely because of the taking of the other half by the Mexican Government. The change in the size of the business was a direct consequence of the condemnation. The loss for which the deduction was taken was a direct consequence of the condemnation. The loss was not the result of a change in the size of the business. It occurred simultaneously with the change in the size of the business, and both were direct and consequential results of the condemnation.

If we assume the same situation except that the property condemned consisted of assets of petitioner of a kind which would not have necessitated a change in the size of its business, the same loss would have resulted. The loss could then certainly not be said to have been a consequence of a change in the size of the business, because there would have been no change in the size of the business. The loss would have been the consequence of the condemnation, exactly as it was here.

It is important to remember that the loss with which we are dealing here is the loss resulting from the disposition of the asset. That loss is measured by the difference between the depreciated cost of the asset and the amount received for it. The loss has no relation to and is in no way measured by the size of the business, or the amount of business done. A change in the size of the business will result in decreased earnings thereafter, or a loss of future earnings, but that is not the loss with which we are concerned, or for which any deduction was or could have been taken. Such a loss, if it could be called that, would be a consequence of a change in the size of the business. But the loss involved here was a loss from the forced sale of assets, resulting solely from that sale. The change in the size of the business was another consequence of the same cause.

We conclude that the deduction for the loss in question should be disregarded for purposes of computing petitioner's excess profits net income for the year 1937.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

MURDOCK, *J.*, dissenting: The petitioner received money in 1937 for what might be described as one-half of the international bridge which it had formerly operated. This money was received pursuant to a contract voluntarily entered into in an earlier year. The transaction in 1937 was, for income tax purposes, a sale or disposition. The sale or disposition resulted in a loss for income tax purposes. The transaction, for all practical purposes, reduced the petitioner's business by approximately one-half, as must have been contemplated as a possibility when the contract was originally made. The reduction in size of the business through this disposition was a direct cause of the loss or, to put it the other way around, the loss was a consequence of a change in the size or condition of the business engaged in by the taxpayer. Section 711(b)(1)(K)(ii) provides in such cases that a deduction shall not be disallowed.

I am unable to follow the reasoning of the prevailing opinion which holds that the deduction shall be disallowed for 1937. That opinion speaks of the 1937 transaction as a condemnation by the Mexican Government. There was no condemnation. The Mexican Government merely took in 1937 what it had a right to take under the earlier contract. I could not distinguish this case from one in which a taxpayer had voluntarily sold one-half of its business at a loss. The loss was in a sense a consequence of the election made by the Mexican Government. But loss in this connection is an income tax concept. Even a condemnation is usually followed by an award based upon ap-

praisals, and either gain or loss may result, depending upon whether the amount of the award exceeds the basis for gain or loss on the property. The loss was a consequence of the disposition of property for less than its basis. The disposition was a change in the size of the business. I see no reason to conclude that Congress intended to disallow a deduction under such circumstances.

TURNER and HARRON, *JJ.*, agree with this dissent.