JAMES F. WATERS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 11252.

Circuit Court of Appeals, Ninth Circuit. March 19, 1947.

Rehearing Denied April 25, 1947.

Everett S. Layman, of San Francisco, Cal. (John P. Fryer and A. J. Cathcart, both of San Francisco, Cal., of counsel), for petitioner.

Sewall Key, Acting Asst. Atty. Gen., Helen R. Carloss and Harry Marselli, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This case is here on review of a decision of the Tax Court sustaining the Commissioner's determination of deficiencies in income tax, declared value excess profits tax, and excess profits tax for the calendar year 1941.

The taxpayer is a dealer in automobiles. In 1938 it acquired certain insurance policies written on the life of its president, who was also its principal stockholder, these policies having been originally taken out by the president in his own right. In 1935 the insured had transferred the policies to another corporation which he controlled, in consideration of their aggregate cash surrender value less the current premiums. In 1938 the transferee corporation merged with the taxpayer and the policies became the latter's property by operation of law. Neither party to the merger recognized any gain or loss thereon. Taxpayer failed to pay premiums becoming due in 1939, and the policies, in conformity with their provisions, became converted into various forms of term insurance. Upon the death of the insured in 1941 taxpayer received a sum in excess of $141,000 upon the policies but did not report the proceeds in its returns. In determining the deficiencies the Commissioner arrived at the taxable net proceeds by deducting all sums paid as premiums since the original transfer, the amounts paid for the policies when originally transferred, and an additional credit unnecessary to describe.

1. Taxpayer contends that it is entitled to the benefit of § 22 (b) (1) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 22 (b) (1), excluding from gross income amounts received under a life insurance policy paid by reason of the death of the insured. Section 22 (b) (2) (A), under which the deficiency in income tax was assessed, is said to be inapposite. This subdivision provides that in the case of a transfer for a valuable consideration, by as-

signment or otherwise, of a life insurance contract, only the actual value of such consideration and the amount of the premiums and other sums paid by the transferee shall be exempt from taxation under § 22 (b) (1). Taxpayer points to the next sentence of subdivision (A) which in substance provides that the provision above summarized shall not apply if the insurance contract has a basis for determining gain or loss in the hands of a transferee determined by reference to such basis thereof in the hands of the transferor. We think the sentence is not here relevant. The common sense of the limitation and its legislative history [1] alike indicate that the limitation is to be effective only if the transfer by the *original owner* of the policy was one in which the transferee took the transferor's basis—a situation not obtaining here. [2] Had the first transferee collected on the policies the net proceeds would have been includable in gross income; and taxpayer stands in the shoes of its transferor. [3]

As an alternative the taxpayer claims that § 22 (b) (2) (A) is inapplicable because of the lapse of the policies in 1939 for non-payment of premiums. The argument proceeds on the assumption that the policies were not thereafter the same contracts as those transferred. The assumption is groundless. No new contracts came into existence. The changes in the periods and amounts of insurance were effected by the terms of the insurance contracts as written in the first instance.

As to two of the policies taxpayer argues that they had no cash surrender value when originally transferred, hence their transfer was not for a valuable consideration. However, the value of an insurance policy to the holder is not confined to its cash surrender value; and the record discloses that, in addition to the payment of the surrender value of the remaining policies, a general assignment of all the policies was contemporaneously made by the insured for a recited consideration of ten dollars. There was no direct attempt below to impeach the verity of the recital, and such evidence as there is on the point is equivocal and inconclusive.

The final argument on this phase is that the insurance proceeds constitute an indemnification of the taxpayer for the loss of its president, and are not income within the intendment of the Sixteenth Amendment. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, is relied on as authority. While that decision has displayed an unexpected vitality within the limits of its particular facts, [4] the lower federal courts would hardly be justified in extending its doctrine to wider fields. We do not doubt the power of Congress to tax life insurance proceeds as income under the limitations prescribed by this statute. Compare United States v. Supplee-Biddle Co., 265 U.S. 189, 195, 44 S.Ct. 546, 68 L.Ed. 970. [5]

2. The second major contention is that the proceeds of the policies are abnormal income attributable to prior taxable years under § 721 (b) and (c) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 721 (b, c), and are therefore not includable entirely in gross income for the year 1941. The Tax Court determined that while the proceeds were abnormal income, they were not attributable to prior years. We think we are without jurisdiction to review its decision on this phase. Congress has provided in § 732 (c) that if "the determi-

---

[1] Senate Report No. 1631, 77th Cong., 2nd Sess., p. 69; House Report No.2586, 77th Cong., 2nd Sess., p. 36 (1942-2 Cum. Bull. 701).

[2] The limitation seems to have been enacted to avoid inequitable results such as those occurring in King Plow Co. v. Commissioner, 5 Cir., 110 F.2d 649, and Stroud & Co. v. Commissioner, 45 B.T.A. 862. Compare result in Hacker v. Commissioner, 36 B.T.A. 659.

[3] The operation and effect of the Section is set out in § 19.22 of Treasury Regulations 103, as amended. Example

[2] illustrates clearly the inapplicability of the limitation to the present case.

[4] See Helvering v. Griffiths, 318 U.S. 371, 404, 63 S.Ct. 636, 87 L.Ed. 843.

[5] For cases in which, without discussion of the constitutionality of the statutory provisions, taxpayers were in analogous circumstances required to include in gross income the proceeds of life insurance policies, see cases cited in footnote 2, supra. Consult also Lambeth v. Commissioner, 38 B.T.A. 351; E. T. Slider, Inc. v. Commissioner, 5 T.C. 263; Premier Products Co. v. Commissioner, 2 T.C. 445.

nation of any question is necessary solely by reason of section 711 (b) (1) (H), (I), (J), or (K), section 721, or section 722, the determination of such question shall not be reviewed or redetermined by any court or agency except the Board" [now the Tax Court]. It is conceded that the determination is necessary solely by reason of the interpretation given § 721 and the regulations thereunder. The taxpayer insists, however, that the interpretation and application of § 721 presents a question of law; that such a question must be resolved by the judicial, not the executive branch; and that, as applied to the taxpayer, § 732 (c) is invalid. It is argued that the Tax Court, being an arm of the executive branch of the government, is not vested with the judicial power of the United States and can not determine with finality questions of law.[6]

█ The Tax Court, in Southwestern Oil & Gas Co. v. Commissioner, 6 T.C. 1124, observed that "the general purpose of § 721, Internal Revenue Code, added by § 201 of the Second Revenue Act of 1940, as amended in 1941 and 1942 [26 U.S.C.A. Int.Rev. Code, § 721], is to relieve the burden of the excess profits tax in certain hardship cases by permitting the reallocation of certain portions of its income, described as net abnormal income, from the year of its actual realization to other years." The same view of the section as constituting a relief measure is again expressed in Arrow-Hart & Hegeman Electric Co. v. Commissioner, 7 T.C. 1350, handed down December 19, 1946. We are not persuaded that the view is wrong.[7] It is well settled that where statutes create special relief, credits, or the like, such concessions are matters of legislative grace, New Colonial Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348, and that Congress may preclude judicial review of the determinations of an administrator in respect of them. Compare Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 561, 562, 48 S.Ct. 587, 72 L.Ed. 985; Heiner v. Diamond Alkali Co., 288 U.S. 502, 507, 53 S.Ct. 413, 77 L.Ed. 921; Welch v. Obispo Oil Co., 301 U.S. 190, 193-196, 57 S.Ct. 684, 81 L.Ed. 1033. Consult also Lynch v. United States, 292 U.S. 571, 587, 54 S.Ct. 840, 78 L.Ed. 1434; Duquesne Steel Foundry Co. v. Commissioner, 3 Cir., 41 F.2d 995, affirmed 283 U.S. 799, 51 S.Ct. 491, 75 L.Ed. 1422.

Since we find no error in matters subject to review, we affirm the judgment.

---

[6] Taxpayer relies on the provisions of Article I, Section 1; Article II, Section 1; Article III, Sections 1 and 2; and Article VI of the Constitution, and on Marbury v. Madison, 1 Cranch 137, 2 L. Ed. 60; Martin v. Hunter's Lessee, 1 Wheat. 304, 4 L.Ed. 97; Springer v. The Philippine Islands, 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845; United States v. American Trucking Ass'ns, 310 U.S. 534, 544, 60 S.Ct. 1059, 84 L.Ed. 1345; Walker v. United States, 8 Cir., 83 F.2d 103.

[7] That Congress was motivated by practical considerations in limiting review of issues such as that sought to be raised here is apparent from various committee reports. For example, see House Report 2333, 77th Cong., 2nd Sess., p. 149, "Because of the complicated nature of the issues involving relief under section 722 and the abnormalities under sections 711 (b) (1) and 721, and the wide discretionary powers lodged in the Board in the determination of such issues, it is essential that all such issues be decided by one group familiar with the problems involved. Only by this method can a consistent and uniform application of the principles established be assured in all cases." Similar language is found in Senate Report 1631, 77th Cong., 2nd Sess., pp. 206–7. Cf. Williamsport Wire Rope Co. v. United States, post, 277 U. S. at pages 561, 562, 48 S.Ct. at page 590, 72 L.Ed. 985, "Thus the determinations of the Commissioner in this delicate and complex phase of revenue administration would be subjected to review by a large number of courts, none of which have ready access to the information necessary to enable them to arrive at a proper conclusion in revising his decisions; whose experience in passing upon questions of this character would be limited; and whose varying decisions would tend to defeat, rather than promote, that equality in the application of the revenue law which sections 327 and 328 were designed to insure."