THE MINE AND SMELTER SUPPLY COMPANY, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11609. Promulgated June 24, 1948.

*Lewis A. Dick, Esq.*, and *Floyd K. Haskell, Esq.*, for the petitioner.
*Frank M. Cavanaugh, Esq.*, for the respondent.

1186

**OPINION.**

Tyson, *Judge*: The question presented is whether, in determining petitioner's average base period net income for the purpose of com-

puting its excess profits credit under the income method for the taxable years 1941 and 1942, the petitioner is entitled to an adjustment of its 1937 income through the elimination from and consequent restoration to base period income of an abnormal deduction under the provisions of section 711 (b) (1) (J) (i) and (K), Internal Revenue Code.[1] More specifically, petitioner contends that the character of the 1937 stock bonus was such that it constituted a deduction of a separate class from current salaries and that the deduction was abnormal for petitioner within subparagraph (J) (i) and, further, that the abnormality was not a consequence of any of the factors specified in subparagraph (K) (ii) as limitations upon the application of subparagraph (J).

Petitioner makes no claim for any adjustment under the provision of subparagraph (J) (ii), which pertains to abnormalities in amount rather than class.

The respondent contends that the 1937 stock bonus was claimed on the 1937 return and allowed as a deduction for additional compensation, which was normal for petitioner and not properly subject to a separate classification. He further contends, in the alternative, that, if the deduction was a class abnormal for petitioner within subparagraph (J) (i), *supra*, then it was a consequence of an increase in gross income, of a decrease in the amount of salary deduction, of a change in size, of a change in the manner of operation as a result of the Denver Seep family's acquisition of a controlling stock interest.

[1] SEC. 711. EXCESS PROFITS NET INCOME.
* * * * * * *
(b) TAXABLE YEARS IN BASE PERIOD.—
(1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e):
* * * * * * *
(J) ABNORMAL DEDUCTIONS.—Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions—
(i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and
(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.
(K) RULES FOR APPLICATION OF SUBPARAGRAPHS (H), (I), AND (J).—For the purposes of subparagraphs (H), (I), and (J)—
* * * * * * *
(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.
(iii) The amount of deductions of any class to be disallowed under such subparagraphs with respect to any taxable year shall not exceed the amount by which the deductions of such class for such taxable year exceed the deductions of such class for the taxable year for which the tax under this subchapter is being computed.

In *Green Bay Lumber Co.*, 3 T. C. 824, 830, we held that subparagraph (J), *supra*, is a remedial provision which should be construed reasonably in order to give the relief it was intended to provide and, further, that it was not intended to limit the classification of deductions to the statutory deduction categories of section 23 of the code. In that case and in numerous other cases involving subparagraph (J), *supra*, we decided the question of classification to be one largely of fact in determining whether or not a certain item of business expense was of such a character as to reasonably warrant a separate classification from what would otherwise be its general category for purposes of tax deductions. Thus, we held in *Green Bay Lumber Co.*, *supra*, that certain bad debts were of a separate class from other deductible bad debts; in *Arrow-Hart & Hegeman Electric Co.*, 7 T. C. 1350 (third and fourth issues), that a special assessment of school tax was not of a separate class from other deductible taxes (fifth issue), that certain payments for pensions, sick pay, etc., were of a separate class from current routine salaries (sixth issue), that interest on funds borrowed to retire preferred stock was not of a separate class from other deductible interest on loans for current operations; in *Harris Hardwood Co.*, 8 T. C. 874, 885, that unemployment compensation payments were of a separate class from other deductible taxes; in *Oaklawn Jockey Club*, 8 T. C. 1128, following the holding on the sixth issue in *Arrow-Hart* case, that interest on loans during a so-called dormant period was not of a separate class from other deductible interest on loans for current operations; in *Frank H. Fleer Corporation*, 10 T. C. 191, that a bad debt resulting from a transaction not directly connected with the business was of a separate class from other deductible bad debts, and that certain excise taxes were not of a separate class from other deductible taxes; and in *Wentworth Manufacturing Co.*, 6 T. C. 1201, that some eleven items of business expenses each should be given separate classifications for determining the abnormality thereof either in class or in amount under subparagraph (J), *supra*. From these authorities it is clear that in the instant case the petitioner's 1937 stock bonus, which was deducted in that year under the general category of compensation, may be classed separately from the routine or normal administrative salaries paid in that year if the facts herein establish that the stock bonus payments were of a character sufficiently different to reasonably warrant separate classification.

The terms of the employment contract executed by petitioner in June 1937 with each of the selected 27 executives and key employees and the circumstances leading up to that cooperative plan show that the stock bonus was founded upon two considerations: (1) Primarily, to give the participants stock ownership interests in the business which would serve as a further incentive for such personnel to remain in

the employment of petitioner, and (2) to partially reward the participants for past services rendered in positions of responsibility. No such stock bonus had ever been declared by petitioner prior thereto, and the testimony is clear that at that time it was not contemplated that similar bonuses would be subsequently issued. The stock bonus was not related to petitioner's earnings and was of a character different from the profit-sharing cash bonuses provided for in the contracts starting with the year 1938, since the latter were dependent upon earnings and were intended solely as additional compensation for the services rendered in each subsequent year for which paid. The 1937 stock bonus amounted to over one-fourth of petitioner's then outstanding capital stock and the aggregate par value thereof, in the amount of $130,000, was in excess of 100 per cent of the total basic salaries paid the participants for 1937. Further, the stock bonus was, at the time (several years prior to the enactment of the Excess Profits Tax Act containing relief provisions), considered by petitioner as a special or abnormal nonrecurring expense apart from regular compensation and was entered in a special account kept in the Denver general office instead of being charged to the regular salary accounts maintained separately by each division and the general office, respectively.

We are of the opinion that the facts summarized in the immediately preceding paragraph establish that the 1937 stock bonus of 2,000 shares issued to petitioner's employees was of such a character as to constitute a separate class of deduction. The fact that, in addition to the primary purpose of giving employees an ownership position, there was a further purpose in issuing the bonus, of partially recognizing the past services of the employees, does not alter the classification. *Arrow-Hart & Hegeman Electric Co., supra* (5th issue); *Green Bay Lumber Co., supra;* and *Frank H. Fleer Corporation, supra.* We are of the further opinion that the same facts establish that the stock bonus was so unusual and extraordinary in the petitioner's business as to be "abnormal" within the meaning of section 711 (b) (1) (**J**) (i), *supra.* On this feature, the more outstanding facts are that no such stock bonus had ever been issued before by petitioner, that it was not contemplated that bonuses of a similar character would be thereafter issued, and that the size of the bonus was over one-fourth of petitioner's outstanding stock and in excess of 100 per cent of the total basic salaries paid the participants for 1937.

The fact that on petitioner's 1937 income tax return the stock bonuses were shown on the same schedule with administrative salaries for that year for purposes of the expense deduction claimed and allowed is immaterial in the determination of the questions here involved. The two subsequent and comparatively small stock bonuses

of 150 shares issued in 1941 and 90 shares issued in 1942 were not the result of any fixed policy, but rather were the result of uncontemplated circumstances arising, and do not, in our opinion, change the aspect of abnormality of the 2,000-share stock bonuses in 1937. The new employment contracts, effective January 1, 1942, further evidence the fact that the 1937 stock bonus was not adopted as a regular policy payment of additional compensation, for such contracts provided only a continuation of the plan for annual profit-sharing bonuses.

Our next consideration is whether the abnormality of the stock bonus was a "consequence of," that is, whether it followed and was dependent upon any one of the negative factors enumerated in subparagraph (K) (ii), *supra*. The evidence herein is directed not only to establishing that those negatives did not exist, but also goes further, in line with the suggestion made by this Court in *William Leveen Corporation*, 3 T. C. 593, to establish affirmatively that the abnormal deduction was a consequence of something other than those negative factors. See also *City Auto Stamping Co.*, 7 T. C. 354, 362. The documentary evidence and the uncontradicted testimony show, conclusively in our opinion, that the 1937 stock bonus was a consequence of and solely dependent upon the then existing need of solidifying and revitalizing the management of the business through recognition of the services and abilities of the executives and other key employees and cementing their relations with petitioner by giving them stock ownership in the business they had helped to create.

The coincidental occurrence of a gradual but steady increase in petitioner's gross income from 1933 to 1937 did not lead to the stock bonus, for the latter had no particular relation thereto, percentage-wise or otherwise, and the uncontradicted testimony is that the abnormal stock bonus would have occurred regardless of whether or not there was any increase in gross income, cf. *Pacific Gas & Electric Co.*, 7 T. C. 1142, and *Harris Hardwood Co., supra*, for the stock bonus was designed primarily to give the key personnel ownership interests in the business.

It is stipulated that, except as to deductions for salaries, the stock bonus was not a consequence of a decrease in the amount of some other deduction, and the facts show that there was no decrease in deductions for salaries.

The record is clear that there was no change, at any time material here, in the type or size of petitioner's business, and the evidence does not support respondent's contention that the stock bonus was a consequence of a change in the manner of operation or the condition of the business within subparagraph (K) (ii), *supra*. The manner of petitioner's operation through a home office and four divisions continued without any change in the line of products handled, the terri-

tory served, or the manner of conducting business, and the executives and other key men to whom the bonus was paid were not new employees in newly created jobs, cf. *Wentworth Manufacturing Co.*, *supra*, but were old employees carrying on their regular work. The financial condition of the business was no doubt improved in 1937 over 1934, as contended by respondent, but it was a gradual improvement resulting from a normal increase in net sales and gross income coincident with generally improved business conditions, and, as above stated, the stock bonus was not related to petitioner's gross income. If the stock bonus itself brought about subsequent improved business conditions for petitioner, that is not a factor to be given consideration here, for we are concerned only with antecedent changes upon which the bonus was dependent. *Laredo Bridge Co.*, 7 T. C. 17.

The respondent's contention that the stock bonus was a consequence of "a change in the manner of the operation of the business as a result of the Denver Seep family's acquisition of a controlling stock interest" is based upon the premise that in order to issue the bonus it was necessary for the western stockholders to acquire control from the eastern stockholders. The facts refute such a premise and for this reason, if for none other, the contention is without merit. There is nothing in the record to indicate that the eastern stockholders or any of them at any time were opposed, or would have been opposed, to the 1937 stock bonus.

We hold that the limitations of subparagraph (K) (ii), *supra*, do not prohibit the application of the relief provision of subparagraph (J) (i), *supra*, in the instant case. The respondent erred on this issue.

In our opinion, the stock bonuses paid in 1941 and 1942 should be regarded as of the same class of deductions as the 1937 stock bonus for the purpose of applying subparagraph (J) as limited by subparagraph (K) (iii); that is to say, the amount of the deduction for the stock bonus to be disallowed (eliminated as an abnormal deduction) under subparagraph (J) for the year 1937 shall not be in excess of the amount by which the 1937 stock bonus of $130,000 exceeds the stock bonus of $14,809.50 for the taxable year 1941 and of $9,675 for the taxable year 1942, for which latter years the tax is being computed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

Murdock, *J.*, dissenting: The result reached by the majority in holding that the entire stock bonus was a class of deduction separate from current cash salaries, was abnormal in class, and, therefore, should be disallowed as a deduction, defeats the very purpose of the

statute. That purpose is to construct what would be normal income for the base years by eliminating deductions for items which were not normal for those years. The findings show that the directors entered into the bonus contracts for terms of employment of five years for the executives and three years for other key personnel in order to keep them in the business and in part to recognize the valued services rendered by the named individuals, for which services they had not been adequately compensated. There was no change in the cash compensation of these employees during the base period years. The conclusion is inescapable that, to some extent at least, the stock bonus represented a part of proper compensation for services rendered by these officers during the four base years, along with and in addition to cash that was paid to them. Normal income for the base period years can not be determined without allowing adequate compensation for officers and key employees. The effect of the majority opinion is to subtract a part of the reasonable allowance for compensation for officers and key employees in order to arrive at normal net income. The result is just the opposite. One arrives by that method at more than normal income and gives the taxpayer an advantage which the statute never intended. The Commissioner recognized all this in allowing the deduction for 1937. While these bonus payments in 1937 might have been abnormal to the extent, if any, that they compensated these men for services rendered outside the base period years, they are not abnormal in so far as they compensated them for services rendered during the base period years.

TURNER *J.*, agrees with this dissent.