ROCKFORD SCREW PRODUCTS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30712, 37269.   Promulgated February 26, 1954.

*B. W. Flinn, C. P. A.*, for the petitioner.
*Robert R. Veach, Esq.*, for the respondent.

OPINION.

I.

OPPER, *Judge:* Respondent issued a timely notice of deficiency with respect to petitioner's excess profits tax for the fiscal year 1946. In its petition placing that deficiency in issue petitioner also complained of respondent's failure to act favorably on claims for refund which petitioner had filed with respect to fiscal years 1943 and 1944 based upon a recomputation of its accelerated amortization pursuant to the subsequent Presidential proclamation issued following the conclusion of World War II. That claim has never been rejected as untimely and

would have been allowed in full except that from the amount concededly due a deduction was made by respondent because of his disallowance of certain items incorporated in petitioner's computation of its original tax liabilities for those years by reason of the provisions of section 711 (b) (1) (J).

Respondent moved to dismiss as to the latter 2 years, 1943 and 1944, on the ground that no deficiency had been determined with respect to them. This motion was granted. Petitioner meanwhile had filed further claims for the same years in which it again referred to the 711 (b) (1) (J) adjustments and again requested allowance of the full amount claimed as a refund. By notices stated to be sent by registered mail and given pursuant to section 732, Internal Revenue Code, respondent rejected those claims to the extent that they had not already been allowed but gave as his reason with respect to 1943 only that under the statute of limitations the claim had been filed too late.

In a second petition, Docket No. 37269, the proceedings under which were consolidated with those initiated by the first petition, petitioner contested the disallowance so communicated to it and reiterated its demand that the full amount of the conceded refund due to accelerated amortization be allowed, complaining at the same time of any rejection of its position originally taken pursuant to the provisions of section 711. Procedurally the year 1944 is no longer in controversy as respondent concedes that an agreement to extend the statute of limitations made the second claim timely with respect to that year. But the first question still persisting as to 1943 is whether we have jurisdiction to determine the correctness of the 711 adjustments on the merits as we are called upon to do by both parties with respect to 1944 and 1946.

Respondent's first contention applicable to the year 1943 is that the jurisdictional matter is now res judicata, or the law of the case, and that the second proceeding must also be dismissed. But concededly additional developments have occurred since then. See *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620. Petitioner has revised its claim and respondent has denied it by a new notice—one which for the first time categorically [1] refers to section 732. If petitioner's first petition was premature because of the absence of any "notice of disallowance" it would have no more effect on the second proceeding than if a taxpayer appealed from a so-called 30-day letter and later a true notice of deficiency was issued. We are hence unwilling to say that the first dismissal is conclusive here.

The contention that the second claim was untimely as having been filed more than 3 years after filing the return and more than 2 years

---

[1] The notice states: "In accordance with the requirements of section 732 of the Internal Revenue Code, notice is hereby given of the disallowance of your claims for refund filed under section 711 (b) (1) (J) (ii) of the Internal Revenue Code for the taxable years ended June 30, 1943 and 1944."

after payment, section 322, Internal Revenue Code, would be valid only if that claim is to be considered as a new claim. This argument may not be one that goes to jurisdiction, see *United Business Corporation of America*, 19 B. T. A. 809, 831, affd. (C. A. 2) 62 F. 2d 754, certiorari denied 290 U. S. 635; *General Lead Batteries Co.*, 20 T. C. 685, on appeal (C. A. 3), although respondent so frames it. If the later claim was no more than an amendment of the first, raising no issues not inherent in the original claim and concededly filed before the first claim had been acted on under section 732, it seems to us invulnerable to the charge of untimeliness. See *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62; *Keneipp* v. *United States*, (C. A., D. C. Cir.) 184 F. 2d 263. That respondent, in passing upon the section 124 claim, felt at liberty to delve into the computations arising from petitioner's reliance upon section 711 (b) (1) (J) adequately demonstrates that the second claim,[2] specifically relying on the 711 computation, was connected with and a development of the first. See *Packer Publishing Co.*, 17 T. C. 882, 898.

Any possible argument that the first claim had already been rejected by the time the second claim was filed, cf. *Solomon* v. *United States*, (C. A. 2) 57 F. 2d 150, may be disposed of with the comment that petitioner's original claim was necessarily still pending, at least to the extent of the amount of the 711 (b) (1) (J) adjustment. The Tax Court has exclusive jurisdiction[3] to consider actions by the Commissioner with regard to claims under section 711 (b) (1) (J), see *Colonial Amusement Co. of Philadelphia* v. *Commissioner*, (C. A. 3) 173 F. 2d 568; *James F. Waters, Inc.* v. *Commissioner*, (C. A. 9) 160 F. 2d 596, certiorari denied 332 U. S. 767, and no notice of rejection had yet been given by the Commissioner that would enable the taxpayer to go to the Tax Court. See *Midtown Catering Co.*, 13 T. C. 92; *McKesson & Robbins* v. *Edwards*, (C. A. 2) 57 F. 2d 147. Furthermore, any attempt to set off a section 711 disallowance against a section 124 refund was expressly prohibited by section 124 itself, which says:

The amount to be * * * refunded or credited in the same manner as if it were an overpayment, shall not be diminished by any credit or set-off based upon any item, inclusion, deduction, credit, exemption, gain or loss, other than one resulting from the effect of paragraph (4) of this subsection. (Sec. 124 (d) (5), I. R. C.)

---

[2] In fact respondent appears to concede that the two claims are the same for he says: "The relief sought is identical in each instance, namely, a refund of excess profits tax in the amount of $4,493.57 for the year ended June 30, 1943 based upon adjustments under section 711 (b) (1) (J), Internal Revenue Code."

[3] SEC. 732. REVIEW OF ABNORMALITIES BY BOARD OF TAX APPEALS.

(c) FINALITY OF DETERMINATION.—If in the determination of the tax liability under this subchapter the determination of any question is necessary solely by reason of section 711 (b) (1) (H), (I), (J), or (K), section 721, or section 722, the determination of such question shall not be reviewed or redetermined by any court or agency except the Board.

Consider the taxpayer's dilemma if the July 6, 1950, letter was a true notice of rejection. He cannot come to the Tax Court because, there being no deficiency and no notice under section 732, no jurisdiction would be thought to attach.[4] See *Midtown Catering Co.*, *supra*. And if he proceeds to the District Court he can be met with the response that the rejection "relates to the application of section 711 (b) (1) (J)" and hence not that court, but only the Tax Court has jurisdiction. Sec. 732, I. R. C. See *May Broadcasting Co.* v. *United States*, 52–1 U. S. T. C., par. 66035, —— A. F. T. R. ——. If this were so respondent by his own extra-legal procedure would have succeeded in depriving petitioner of his day in any court. We cannot believe that under such circumstances Congress could have intended that jurisdiction should be withheld from the Tax Court, nor that the claim should be rejected as untimely rather than being adjudicated on the merits.

A public officer cannot be presumed to be disobeying the law. *United States* v. *Carr*, 132 U. S. 644; *United States* v. *Crusell*, 81 U. S. 1. We prefer to regard the letter as lawful, and hence no notice of rejection. But if it was such, being contrary to the law it was a nullity and cannot be given any effect. We conclude that petitioner's claims should be considered under section 732:

SEC. 732. REVIEW OF ABNORMALITIES BY BOARD OF TAX APPEALS.

(a) PETITION TO THE BOARD.—If a claim for refund of tax under this subchapter for any taxable year is disallowed in whole or in part by the Commissioner, and the disallowance relates to the application of section 711 (b)(1)(H), (I), (J), or (K), section 721, or section 722, relating to abnormalities, the Commissioner shall send notice of such disallowance to the taxpayer by registered mail. * * * such notice of the disallowance shall be deemed to be a notice of deficiency. * * *

## II.

On the merits, petitioner does not contend that the interest it paid on notes issued as dividends was a separate class of deduction, see *Green Bay Lumber Co.*, 3 T. C. 824, but only that the total paid was in excess of 125 per cent of normal—a proposition not controverted by respondent. His sole opposition is based on the provisions of section 711 (b) (1) (K) (ii) forbidding allowance of the offset if the abnormal deduction was the consequence of "an increase in the gross income of the taxpayer" or "a change at any time in the type, manner of operation, size or condition" of the taxpayer's business. The best way for petitioner to discharge the burden placed upon it by this section of disproving the negatives listed is to show affirmatively that the cause was something other than those mentioned. See

---

[4] The petition in Docket No. 30712 was in fact dismissed as to 1943 and 1944 for lack of jurisdiction.

*William Leveen Corporation*, 3 T. C. 593. This, we think, petitioner has done.

The stated and obvious purpose of issuing the notes which in turn were the cause of the payment of interest was petitioner's desire to obtain a dividends-paid credit which for the first time became significant under the provisions of the undistributed profits tax of 1936. Whether or not petitioner's business had expanded would have little, if any, bearing on this motive. See *Harris Hardwood Co.*, 8 T. C. 874, 884–885. Petitioner, desiring to maintain its cash for working capital,[5] resorted to the device of paying dividends in notes and thereby pursued the very course which Congress in enacting the legislation had intended.[6] We think it would be unreasonable to conclude that the manifest desire to save taxes and distribute its earnings in a taxable form was the consequence in anything but a remote degree, if at all, of a change in the operation of the business. See *Mine & Smelter Supply Co.*, 10 T. C. 1179, 1190–91; *Arrow-Hart & Hegeman Electric Co.*, 7 T. C. 1350, 1377–79; *Laredo Bridge Co.*, 7 T. C. 17, 23–25.

Had there been no undistributed surplus tax and no corresponding motive for the issuance of the dividend notes, no interest payments thereon would have been required. In that event petitioner's base period net income and consequently its excess profits credit would have been enhanced. We take the view that this is precisely the situation to which section 711 was directed and that nothing more need be shown by petitioner as to 711 (b) (1) (K) than is contained in the present record.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

[5] Although respondent contends that the December 1936 payment of dividends partly in notes rather than wholly in cash was a direct consequence of a change in petitioner's size and manner of operation, which allegedly caused a money shortage, it is noteworthy that petitioner still had $167,400.32 in cash as of January 1, 1937.

[6] Corporations should not be permitted to withhold from the beneficial shareholders unneeded corporate income at the expense of the revenues of the United States and to the detriment of the shareholder. The bill proposes to remove many of these inequities by relieving from tax corporations which distribute all their net earnings annually as earned, and by taxing corporations accumulating their net income at a rate to compensate to a large extent for the amount of tax on the shareholders' income lost by reason of the failure to make a complete distribution. (House Ways & Means Committee Rept. No. 2475, 74th Cong., 2d Sess., p. 4.)

And the statute itself provided:

SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

(d) DIVIDENDS IN OBLIGATIONS OF THE CORPORATION.—If a dividend is paid in obligations of the corporation, the amount of the dividends paid credit with respect thereto shall be the face value of the obligations, or their fair market value at the time of the payment, whichever is the lower. * * * (Rev. Act of 1936, P. L. 740, 74th Cong.)