DWIGHT D. MONROE *vs.* THE HARTFORD STREET RAIL-
WAY COMPANY.

First Judicial District, Hartford, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action against a street-railway company to recover damages for
negligently running its trolley-car into and injuring the plaintiff's
milk wagon, the defendant claimed that the plaintiff's driver had
violated a city ordinance in "leaving" his horses in the street un-
hitched, and that such violation, if found to be the proximate
cause of the injury, was a bar to his recovery. *Held:* —
1. That an absence of the driver, although temporary, which took him
out of sight and hearing of the horses and beyond prompt reach in
case of need, constituted a "leaving" of the horses within the
meaning of the ordinance.
2. That it was not essential to a violation of the ordinance that the
driver's conduct, in leaving his horses unhitched, should have been
negligent. It was enough that the violation, whether attended
with negligence or not, was the proximate cause of the injury.
3. That inasmuch as it appeared from the record that the violation of
the ordinance in question was, or might have been, the proximate
cause of the injury, an instruction which authorized the jury to
find that there had been no violation, provided they first found
that there had been no negligence on the driver's part, was inac-
curate and misleading.
While the admission of an insignificant bit of irrelevant evidence on
cross-examination will not ordinarily be ground for a new trial, it
may have that effect if the jury is permitted, under the instruc-
tions of the court, to make a wrongful application of it.

Argued October 13th—decided December 18th, 1903.

ACTION to recover damages for negligently running into
and injuring the plaintiff's milk wagon, brought to the Court
of Common Pleas in Hartford County and tried to the jury
before *Coats, J.;* verdict and judgment for the plaintiff, and
appeal by the defendant. *Error and new trial granted.*

The plaintiff was the owner of a pair of horses and wagon,
used for the daily delivery of milk upon a route including
Asylum Avenue in the city of Hartford, which was driven
by his servant, Brewer.

The defendant operated an electric railroad upon Asylum Avenue.

At the time of the injury complained of, the plaintiff's team was standing across Asylum Avenue with the wagon upon the tracks of defendant's railroad, the plaintiff's servant, Brewer, being at that time in the kitchen of a neighboring house occupied by one Pattenden. While thus standing the wagon was struck by a car of defendant, thrown off the track, and the wagon and its contents injured.

The complaint charges the defendant with negligence, in that it "negligently struck said wagon as it was standing stationary on said tracks," while "running a car at a high rate of speed."

The testimony affecting the claimed negligence of the defendant's motorman in permitting the car to strike the wagon, as well as the testimony affecting the claimed negligence of Brewer in permitting his team to stand across the tracks, was somewhat contradictory. It appeared that the plaintiff's horses were gentle, intelligent, accustomed to the milk route and to standing unattended in front of houses of customers while the driver delivered the milk put up in bottles; that in this instance Brewer left the horses unhitched and unattended while he was in Pattenden's house for the purpose of delivering milk and immediately returning as usual; that he remained in the house for the purpose of looking up and settling Pattenden's milk account, consuming much more time than usual, and on coming out of the house heard the crash of collision.

The evidence was conflicting as to the actual time spent in the house; Brewer stating it was ten or fifteen minutes, and other witnesses estimating it was a less time.

The defendant claimed that the conduct of Brewer, in thus leaving the horses and remaining in Pattenden's house, was negligence contributing to the accident, and also constituted a violation of law contributing to the injury; and that such illegal conduct, if found to be a proximate cause of the injury, was a conclusive bar to the plaintiff's right to recover, and not merely evidence of contributory negligence;

Monroe v. Hartford Street Ry. Co.

and, in this connection, produced in evidence an ordinance of the city of Hartford which declared that "leaving any horse unhitched . . . within any street or thoroughfare of said city " was a nuisance, punishable by a fine of $5.

The plaintiff controverted these claims, and in addition to the evidence above mentioned produced evidence tending to prove that the horses were so trained that they could take pretty good care of themselves in the street without a driver, and could swing the wagon round in the street better than it could be done by some drivers.

In view of these claims upon this state of the evidence, the trial court instructed the jury as follows: " There is another element which enters, or may enter, into this case so as to affect the verdict which you can lawfully render in this case. This aspect of the case arises out of the ordinance of the city of Hartford relative to leaving any horse unhitched. Now, there is some ambiguity in the language of the ordinance in respect to the particular portion of the ordinance on which the claim in this case is made, which reads as follows: ' Permitting any animal to go at large in any highway or public place in the city or leaving any horse unhitched, or permitting any animal, wagon, or cart to stand upon or over any cross-walk, by the person having control at the time of the same, within any street or thoroughfare of said city,'—and the ordinance declares that a nuisance and forbids it. I instruct you that that part of the ordinance applies to leaving a horse unhitched within any street or thoroughfare of said city,—that is, the city of Hartford. Such an ordinance must receive reasonable interpretation. It is not true as matter of law, that in order to be free from a violation of the ordinance a person having a horse on the street is obliged to hold the reins in his hand or hold the horse by the bit all the time that the horse remains unhitched on the street, but the horse must not be allowed to remain unhitched without at the same time being in the effective control of some person. What is effective control will largely depend upon the facts of the particular case. If the horse is timid and inexperienced a different kind of control

would be required than would be required in the case of a horse which is reliable and trained to submit to the control of his attendant. It is for you to determine under the circumstances of this case whether the horses were left by the driver, Brewer, unhitched and beyond his control. If you find that the horses remained on the street unhitched but at the same time under the effective control of the driver, then there was no violation of the ordinance and the claim of a violation falls to the ground. If you find that there was a violation of the ordinance, you will then inquire whether that violation directly contributed to the injury, and, if you find that the ordinance was violated by the driver and the violation directly contributed to the injury, the law is so that the plaintiff cannot recover in this action and your verdict should be for the defendant."

The reasons of appeal, among others, assign errors in the portion of the charge above quoted, and in the admission of evidence.

*John T. Robinson*, for the appellant (defendant).

*Edward M. Day* and *George B. Thayer*, for the appellee (plaintiff).

HAMERSLEY, J. The purpose of the city ordinance is obvious. It assumes that any horse in a city street without a driver or keeper is a source of danger to the person and property of those using the street, unless the horse is hitched, and that injury to such persons may be the natural result of leaving an unhitched horse in a city street. For the protection of such persons and the prevention of such injuries, it makes the act of leaving any unhitched horse in a city street a misdemeanor punishable by a fine. *State* v. *Keenan*, 57 Conn. 286.

It is also obvious that the evil provided against includes not only the permanent or indefinite abandonment of a horse, but those temporary departures which are most likely to frequently occur if not forbidden. The meaning of the lan-

guage used to accomplish this obvious purpose is clear. There can be no reasonable doubt as to the meaning of " unhitched," used in this connection, and very little as to " leaving." Certainly going away from the horse beyond sight, hearing, and reasonably immediate reach, is " leaving " it within the meaning of the ordinance. When an unhitched horse has been thus left, the ordinance has been violated, whether the horse is gentle and well trained or not.

In his charge the trial judge adds to the ordinance a condition of violation not expressed by its language nor included in its purpose, and tells the jury that it is not enough to find that the horse is unhitched in the highway, and that it has been left in this condition by its driver, but they must also determine whether the horse unhitched, and so left by its driver, is still within his control, and that the kind of control which a driver may retain over a horse he has left unhitched in the street is a question of fact for them to settle. The court says: " It is for you to determine under the circumstances of this case whether the horses were left by the driver, Brewer, unhitched *and beyond his control.*" The kind of control which the jury are thus invited to find from the particular circumstances of the case, appears to be that which a driver may be said to possess over horses after he has left them and until his return, when the horses have been accustomed to stand still while so left. Possibly the trial judge may have intended merely to instruct the jury that Brewer did not leave the horses, within the meaning of the statute, if in fact he remained so near as to substantially retain the physical ability to watch their movements and intervene at once in case of necessity. But certainly the jury might, and probably did, understand him differently. Reading this passage in connection with the remainder of the charge, the state of the evidence, and the claims made, it seems clear that the jury must have understood the court to instruct them that leaving the horses unhitched did not violate the statute, unless, under all the circumstances of the particular leaving, they should be satisfied that his conduct was negligent; in other words, the jury was practically in-

structed that the ordinance only prohibited negligently leaving a horse unhitched in the street.

This instruction, in view of the state of the evidence and claims made, was inaccurate and inadequate. It was, however, harmless, if a violation of the ordinance could not be a proximate cause of the injury alleged, and a new trial should not be granted unless it is clear as a matter of law that when a driver has left his horse in the street unhitched, and a collision between his team and another vehicle occurs directly after he has left them and near the place where he has left them, this unlawful act of his may be a proximate cause of the injury inflicted by the collision. We think it clear that such an unlawful act may be a proximate cause of such injury.

There is some real and more apparent conflict of opinion in the many cases treating of the relation between an illegal act and a coincident injury. In doing an unlawful act a person does not necessarily put himself outside the protection of the law. He is not barred of redress for an injury suffered by himself, nor liable for an injury suffered by another, merely because he is a lawbreaker.

In actions to recover for injuries not intentionally inflicted but resulting from a breach of duty which another owes to the party injured—commonly classed as actions for negligence—the fact that the plaintiff or defendant at the time of the injury was a lawbreaker may possibly be relevant as an incidental circumstance, but is otherwise immaterial unless the act of violating the law is in itself a breach of duty to the party injured in respect to the injury suffered. Ordinarily, in actions of this kind, the breach of duty is a failure to exercise, in conduct liable to be dangerous to others, that care which a man of ordinary prudence would exercise under the particular circumstances of the case. But the State regards certain acts as so liable to injure others as to justify their absolute prohibition. In such case doing the forbidden act is a breach of duty in respect to those who may be injured thereby.

The cause of action which arises upon an injury resulting

from a breach of duty in respect to the party injured in neglecting to use that care which the law requires under the particular circumstances of the case, for the protection of those liable to be injured by such neglect, is the same as the cause of action arising upon an injury resulting from a breach of duty in respect to the person injured in doing an act forbidden by statute, for the protection of those liable to be injured through such act. The main distinction lies in the method of proof. In the former case, the breach of duty must be established by showing a want of due care under all the circumstances; in the latter case it may be established by proving the commission of the illegal act. In both cases two questions are presented. First, was there a breach of duty in respect to any person liable to be injured by the conduct proved? Second, was this breach of duty a proximate cause of the injury alleged? And the principles which determine the relation of the negligent conduct in the one case, or the illegal act in the other, to the resulting injury as a proximate cause, are the same. This view of the law is fully established by our decision in *Broschart* v. *Tuttle*, 59 Conn. 1.

Applying the principles which determine the causal relation between a negligent act and the following injury, to the admitted facts in the present case, it is apparent that the illegal act was not necessarily a mere independent concomitant or condition of the collision, but might well be a contributing cause, and might be, according as the jury should find the attendant or surrounding circumstances, a proximate cause of the injury. " Cause " and " consequence " are correlative terms. One implies the other. When an event is followed in natural sequence by a result it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the cause of the result.

It is the nature of a horse, whether vicious or not, when at large in a public highway, to be a source of danger to those using the highway; and the unlawful act of letting a horse into the highway is adapted to aid in producing an injury received by a child playing in a highway from a horse. thus

left loose, and the unlawful act may be the cause, and proximate cause, of such injury. *Baldwin* v. *Ensign*, 49 Conn. 113, 115. It is the nature of a horse harnessed to a wagon and left without any keeper or restraint in a city street, to be a source of danger to those using the street, and when the driver of a team used in delivering ice from house to house negligently leaves his horses unrestrained while going from the sidewalk to the adjoining post-office for his mail, and the horses thus released from control go on their way through the street, that negligent act of the driver may be the cause, and proximate cause, of an injury received through the collision of the ice-cart with another vehicle in the street. *Loomis* v. *Hollister*, 75 Conn. 718.

And so the illegal act of leaving horses, harnessed to a wagon, unhitched, is adapted to aid in producing a collision resulting from the horses, thus left unrestrained, pursuing their own way through the street. It is for this very reason that the State makes the act illegal. When the resulting collision follows such illegal act in natural sequence, the act is a cause of the collision, and if the sequence is direct and unbroken by any independent, intervening cause, may be the proximate cause. Whether or not, under all the circumstances of the case, it is the proximate cause, is a question of fact for the jury under proper instructions from the court.

The fact that the plaintiff's servant had violated the city ordinance was, therefore, one upon which the plaintiff's right of recovery might depend, and the error of the trial court in the instructions given upon the meaning of that ordinance was material and harmful.

Upon the trial the defendant produced as a witness one John H. Carlson, who was formerly in its employ and was in charge of the car as motorman at the time of the collision. Carlson testified to facts and circumstances tending to show that his conduct was not negligent. Upon cross-examination the plaintiff drew from him an admission that, while employed by defendant as motorman upon another line, he had some trouble in respect to his management of a car. The defendant objected to the questions by which this ad-

mission was obtained, and duly excepted to the ruling of the court admitting the questions.

The fact elicited by the plaintiff's questions was plainly irrelevant and immaterial, and we do not see how in this case such questioning could serve any legitimate purpose of cross-examination. But if the only effect of the error was the admission of an insignificant bit of irrelevant and immaterial testimony, it is not ground for a new trial. Inevitably such testimony to some extent creeps into most trials, and the granting of new trials for such errors would not further, but would seriously obstruct, a just determination of the rights of litigants. If, however, as is claimed by defendant, the course of proceedings as detailed in the record shows that the evidence was admitted under such circumstances that the jury might properly infer an instruction from the court that in determining the only negligence alleged, that is, a failure to exercise ordinary care in the management of a car at the time of accident, they were at liberty to consider facts tending to prove negligence in the selection of competent servants, the error would be a fatal one. It is unnecessary to consider whether this claim of the defendant is fairly supported by the record, inasmuch as a new trial must be granted for error in the charge.

The other errors assigned in the appeal do not call for special mention.

There is error, the judgment of the Court of Common Pleas is set aside, and a new trial is granted.

In this opinion the other judges concurred.