[Civ. Nos. 755, 757.  First Appellate District.—March 11, 1910.]

FRANK J. SULLIVAN, Administrator of Estate of MICH-
AEL P. SULLIVAN, Deceased, Respondent, v. THE
MORTON DRAYING AND WAREHOUSE COMPANY,
a Corporation, and J. B. BOCARDE DRAYAGE COM-
PANY, a Corporation, Appellants.

Action for Death—Negligence of Drayage Corporations—Collision
—Negligence of Single Company—Nonsuit.—In an action for the
death of plaintiff's intestate, caused while he was engaged in his
usual avocation upon a railroad box-car, by the collision of loaded
drayage teams belonging to the corporations appellant, it is held,
upon examination of the record upon appeal, that the liability for
the death is limited to the last-named corporation appellant, and
that the Morton company, appellant, was entitled to a nonsuit, there
being insufficient evidence to sustain the verdict as to it.

ID.—NEGLIGENCE—CONSTRUCTION OF CITY ORDINANCE—FORBIDDEN USE OF UNLOCKED DRAY—QUESTION FOR CITY AUTHORITIES.—A part of a city ordinance which makes it unlawful to drive or use a truck or dray without having attached to the body thereof a suitable chain for locking its wheels, presents only a question for the city authorities, and does not involve the question of negligence.

ID.—STATUTORY NEGLIGENCE—LEAVING TEAM AND DRAY IN STREET UNLOCKED.—A provision of such ordinance making it unlawful for any person to "leave" any animal controlled by him, if attached to a dray or truck, upon the public street, without first securely locking its wheels, when violated, presents a case of statutory negligence, for which the owner of such team would be responsible.

ID.—ORDINANCE NOT VIOLATED—ABSENCE OF STATUTORY NEGLIGENCE—TEAM AND DRAY NOT LEFT.—Where the teamster, after loading his dray, did not "leave" the same in the street within the meaning of the ordinance, but turned his horses away from the box-car, and proceeded to fasten his loaded dray with ropes, when another team negligently collided with his team, and frightening the same made them back onto the box-car causing the death, the death was proximately caused by such colliding team, and the owner of the frightened team is not chargeable with statutory negligence.

ID.—MEANING OF WORD "LEAVE" IN ORDINANCE.—The word "leave," as used in the ordinance, is to depart or go away from, to quit; and the ordinance means to abandon for a time, to go away from the immediate charge and supervision of the animal or animals so left.

ID.—PENAL NATURE OF ORDINANCE—CONSTRUCTION—ORDINARY SENSE OF WORDS.—The ordinance is penal in its nature, and cannot be extended beyond its plain words, and in its ordinary common sense meaning. No ordinary person would say that a teamster tying up his load had left his team.

ID.—BURDEN OF PROOF OF NEGLIGENCE—BURDEN NOT SUSTAINED.—A plaintiff seeking to recover against a defendant for negligence has the burden to prove it, either directly or by facts and circumstances from which negligence may be inferred. *Held,* that such burden was not sustained to show any liability of the Morton company, appellant, under the ordinance in question by reason of its teamster being engaged in fastening up his load, though not holding his lines while so engaged.

ID.—EVIDENCE—SUFFICIENT WIDTH OF SPACE BETWEEN TEAMS FOR PASSAGE—HARMLESS ERROR.—Any error in excluding evidence offered by the Bocarde company to prove that there was an amply sufficient width of space for passage of its team between the Morton team and the railroad track, was harmless, where such proof was otherwise made, and where proof of such sufficient width made it all the more inexcusable negligence for the Bocarde team to collide with and frighten the Morton team, thus causing it to back upon the box-car.

ID.—EXPERT EVIDENCE PROPERLY EXCLUDED—MATTER OF COMMON KNOWLEDGE—PROVINCE OF JURY.—The testimony of experts as to how near a team may drive in relation to another team in the exercise of care and skill in approaching the same and driving past without danger was properly excluded, such question not being one relating to science, art or trade, but being a matter of common knowledge for the jury to determine. It is well known that most animals will shrink or retire from approaching danger, and that a team of horses, upon being run into or struck by the harness or wagon of an approaching team, would be likely to pull back or retire, so as to avert the danger.

ID.—AMENDMENT OF COMPLAINT—CHARGE OF ABSENCE OF LOCK ON WHEELS.—It was not error for the court to allow an amendment to the complaint to charge that the Morton company was negligent in driving its truck without any suitable chain for locking its wheels. The Bocarde company cannot complain of such amendment.

ID.—INSTRUCTIONS—ABSTRACT REQUEST INAPPLICABLE TO EVIDENCE.—An appellant was not injured by the refusal of a requested instruction, which, though abstractly correct, was inapplicable to the evidence, it appearing that the court gave other instructions fully covering the law applicable to such appellant.

ID.—FINDINGS—CONSISTENCY—PROXIMATE CAUSE OF DEATH.—The findings of the jury upon special issues submitted to it are held not to be inconsistent with each other or with the general verdict. The court found upon sufficient evidence that the driver of the Bocarde team carelessly and negligently drove his team in front of the horses of the Morton company; that this caused the Morton company team to back, and that this was the proximate cause of the injury to the deceased.

ID.—IMMATERIAL FINDING—ABSENCE OF CHAIN ON WHEELS OF MORTON COMPANY—NEGLIGENCE OF OTHER COMPANY NOT EXCUSED.—The finding to the effect that if the Morton company had supplied its dray with a suitable chain, and that if the chain had been used and the wheels locked the accident would not have occurred, is not material, and does not in any way excuse the negligence of the Bocarde company. Unless the Morton company was guilty of negligence by reason of the violation of the ordinance, the condition and equipment of its dray was wholly immaterial.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Jesse W. Lilienthal, and Albert Raymond, for Morton Draying and Warehouse Company, Appellant.

Myrick & Deering, for J. B. Bocarde Drayage Company, Appellant.

William J. Herrin, for Respondent

COOPER, P. J.—This action was brought against defendants to recover damages caused by reason of their alleged joint negligence in causing the death of plaintiff's intestate. The jury returned a verdict in favor of plaintiff against both defendants, and judgment was accordingly entered. Each defendant appeals in a separate record from the judgment and the order denying its motion for a new trial, and from an order denying its motion to vacate the judgment, but both appeals will be considered together. In this opinion the appellants will be referred to as the Morton company and the Bocarde company, respectively.

Upon an examination of the record we are of the opinion that the motion of the Morton company for a nonsuit should have been granted, and that the evidence is not sufficient to sustain the verdict as to it.

The evidence shows that while deceased was standing at the door of a railroad box-car, with his back toward the dray of the Morton company, in a place of apparent safety, where he was following his usual avocation, the dray, which was from four to six feet from the car, and which had just been loaded with freight, consisting of boxes, tent-poles, tents and government supplies, was backed up by the team jerking backward toward the car, thus catching deceased between the dray and the car, crushing and killing him. The evidence tended to show that while the Morton dray was standing in the street, and about four to six feet from the said car, with two horses attached, a team with the dray attached belonging to the Bocarde company was carelessly and negligently driven into the Morton company's team, thereby frightening the team and causing it to back the dray against the car. There is no claim made as to negligence on the part of the Morton company except that it was guilty of statutory negligence in violating an ordinance of the city and county of San Francisco, which ordinance is as follows:

"Section 1. It shall be unlawful for any person using or having control of any animal to leave the same upon any public street without being securely fastened, unless it be attached to a dray, truck or water-cart; or, if attached to a dray, truck or water-cart, to leave such animal upon the public street without first securely locking the wheels of the vehicle to which it is attached.

"2. It shall be unlawful for any person to drive or use any truck, dray or water-cart without having attached to the body thereof a suitable chain for locking the wheels thereof.

"3. Any person who shall violate any of the provisions of this ordinance shall be guilty of a misdemeanor."

It is admitted that the Morton company's dray did not have attached to the body thereof a suitable chain for locking the wheels, and that the wheels were not locked at the time of the accident. In so far as the Morton company violated the ordinance by not having a suitable chain attached to its dray, that is a matter entirely with the city authorities in a proper proceeding, and in no way applies to the facts here. If the driver of the Morton company's team left it upon a public street without first securely locking the wheels of the dray, the company would be guilty of statutory negligence, and this would be so even if a suitable chain had been attached to the body of the dray. The question, then, as to the Morton company, is narrowed down to the single one as to whether or not its driver left the team upon the public street within the meaning of the ordinance.

The evidence shows, without conflict, that the Morton company's driver, Sorensen, had just finished loading the dray with freight, tent-poles and tents in cases; that he then pulled away from the car from four to six feet, stopping the team and heading the horses toward Sixth street; that he then took a rope and was engaged in fastening the load and tying the cases when he heard someone give the alarm, and immediately he observed that his team was backing from the fright caused by the approach of the Bocarde team and dray. Sorensen did not then have hold of the lines, but he was right at the dray and engaged in fastening the load. Immediately upon hearing the alarm and seeing the team backing he jumped on the footboard and drove the horses up so as to release deceased.

In our opinion the driver had not left the team within the meaning of the ordinance. The meaning of the word "leave" as used in the ordinance is, to depart or go from, to quit. We use the word "leave" in such sense when we say, "He has just left the house," or "He left his plow in the furrow," or "He has left his wife and children." Thus Milton says (P. L. XI, 1, 269):

> "Must I leave thee, Paradise? thus leave
> Thee, native soil; these happy walks and shades?"

The ordinance means, to depart from, to abandon for the time, to go away from the immediate charge and supervision of the animal or animals so left. It is penal in its nature, and cannot be extended beyond its plain words and its ordinary common sense meaning. No one in the ordinary walks of life would say that a teamster, while tying up his load, had left his team. If the ordinance had said that no one should let loose of the lines by which his horses are held without first securely locking the wheels the meaning would be very different; but if the respondent's contention is correct, the driver who should attach his lines to the seat or lever of the brake, and get down on the ground to lock the wheels, would be guilty of leaving his team, at least while going from his seat to the wheels. Such is not the meaning of the ordinance.

In *Wasmer* v. *Delaware etc. R. R. Co.*, 80 N. Y. 212, [36 Am. Rep. 608], the ordinance of the city made it unlawful for any person to leave a horse in the street unless securely tied. The court, in passing upon the meaning of the ordinance, said: "It cannot be supposed that it was intended by this ordinance to require all venders or peddlers of commodities in the streets to tie their horses or have someone hold them while they are momentarily engaged in delivering the commodities to persons in the streets or at the doors of the houses along the streets. Nor can it be supposed that it was intended to inflict a penalty upon every person who should fail to tie or hold his horses in the streets while standing near them. The ordinance was manifestly intended to reach the cases of persons who might leave their horses in the streets not tied, and go away from them out of sight, or to such a distance as to lose that control which persons may usually exercise over horses when near them."

In *Oddie* v. *Mendenhall*, 84 Minn. 58, [86 N. W. 881], the ordinance provided that it should be "unlawful for any person to leave any horse attached to a vehicle in a street without fastening such animal in the manner provided for herein." The court said: "A reasonable construction must be given to this ordinance. Its object was evidently to prevent drivers from leaving horses standing in the streets without control. It cannot be held that this ordinance must be construed to require a person getting out of a wagon or carriage to hitch the horse attached thereto, even though occupants of the carriage remain therein." (See, also, *Monroe* v. *Hartford etc. Co.*, 76 Conn. 201, [56 Atl. 498] ; *Rowe* v. *Reneer*, 30 Ky. Law Rep. 545, [99 S. W. 250].)

It is incumbent upon a party seeking to recover against a defendant by reason of alleged negligence to prove such negligence, and this proof may be either direct, or by the proof of facts and circumstances from which negligence may be inferred. In this case there is no attempt to prove any fact or circumstance, as to the Morton company, except the fact that its team attached to the dray was standing on one of the public streets of the city and county of San Francisco, and that the driver of the team was not holding the lines, but was with the dray or truck engaged in fastening the load, and near to and within easy access to the team. In such case we cannot hold that the Morton company is liable under the ordinance.

As to the Bocarde company, other errors are alleged, which we will consider in their order.

The court excluded certain testimony offered by the Bocarde company for the purpose of showing the space between the horses of the Morton company and the tracks of the Southern Pacific Railroad Company to the south on King street. It is claimed by the Bocarde company that the offered testimony was material and that it should have been permitted in order to show that there was plenty of room for its team to pass between the team of the Morton company and the railroad track. While in our opinion it would have been better for the court to have admitted the testimony and to have allowed the cross-examination more scope in order that the jury might be fully informed upon each and every phase of the case, yet we do not think the rulings of sufficient importance to justify a reversal of the case. The witness Ryan testified to this

point, and when asked by counsel what was the space, answered, "I think the width of this room." The question as to the space was fully covered by the evidence of the witnesses Rich, Free and Archibold. Not only this, but there is testimony in the record amply sufficient to sustain the finding of the jury that the Bocarde company's team was negligently driven into the team of the Morton company, thus causing it to back, and in such case it is not very material as to whether the space was eight feet or fifteen feet in width, If the driver of the Bocarde team had plenty of space and yet drove into or against the horses of the Morton team, it would tend to show a still greater degree of negligence.

The court did not err in excluding the testimony of experts as to how near in the exercise of care and skill the driver of a team can approach the heads of the horses of another team and drive past without danger, or as to the custom or peculiarities of horses in settling back in their breeching. The question was not one relating to science, art or trade. As to how near the driver of one team can approach the horses' heads of another team without danger necessarily depends upon a variety of circumstances, such as the location, the kind of team being driven, and the kind of team being approached, and the kind of vehicle to which the team is attached. These were matters of general, every-day knowledge, observation and experience, and the jurors hearing the evidence and all the facts were as capable of forming correct conclusions as any so-called experts could be. We all know that most animals will shrink or retire from approaching danger, and that a team of horses upon being run into or struck by the harness or wagon of an approaching team would be very likely to pull back or retire so as to avert the danger.

It was not error for the court to allow the plaintiff to amend his complaint by alleging, as an act of negligence on the part of the Morton company, that it drove its truck without having attached thereto a suitable chain for locking the wheels (*Ryan* v. *Oakland Gas Light etc. Co.,* 10 Cal. App. 484, [102 Pac. 558]). Not only this, but the Bocarde company has no right to complain of an amendment tending to show negligence on the part of the Morton company.

The Bocarde company was not injured by the refusal of the court to instruct the jury that "Men in governing their con-

duct, in the absence of knowledge to the contrary, are entitled to assume that others have not violated the law.'' The proposition as stated in the abstract may be correct, but it has no application to the facts here. It was evidently intended to be considered in connection with the claim that the driver of the Morton team had left his dray without locking the wheels; but, as has been before stated, the driver had not left his team within the meaning of the ordinance. The court gave other instructions fully and fairly covering every material phase of the case, and as favorable to the Bocarde company as it was entitled to under the law.

The instruction numbered thirty-six, requested by the Bocarde company, was properly refused. The evidence did not warrant it, as it did not show that the Morton company had omitted to perform any duty imposed by ordinance.

The findings of the jury in regard to the special issues submitted to it are not inconsistent with each other or with the general verdict. It was found upon sufficient evidence that the driver of the Bocarde team carelessly and negligently drove his team in front of the horses of the Morton company; that this caused the horses of the Morton company to back, and that this was the proximate cause of the injury to deceased. The finding to the effect that if the Morton company had supplied its dray with a suitable chain, and that if the chain had been used and the wheels of the Morton truck locked, the accident would not have occurred, is not material, nor does it in any way tend to excuse the negligence of the Bocarde company. Unless the Morton company was guilty of negligence by reason of the violation of the ordinance, the condition and equipment of its dray was wholly immaterial.

We conclude that the judgment and orders as to the Morton company must be reversed, and as to the Bocarde company affirmed, and it is so ordered.

Hall, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 8, 1910, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 9, 1910.