******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., dissenting. I respectfully dissent. The majority holds that the plaintiff in this malpractice action, Lee Greenwald, cannot pursue his case because "it clearly would violate public policy to impose a duty on the defendant [David Van Handel] to protect the plaintiff from injuries arising from his potential criminal prosecution for the illegal downloading, viewing and/ or possession of child pornography." I disagree with the majority's conclusion on several grounds.

First, I believe that the wrongful conduct rule is ill suited for tort actions. That rule originated as an equitable defense in contract law under the Latin phrase ex turpi causa non oritur actio, which means "no cause of action can arise out of an illegal or immoral inducement." *Gagne* v. *Vaccaro*, 255 Conn. 390, 407, 766 A.2d 416 (2001); see also Black's Law Dictionary (8th Ed. 2004). In my view, this rule is contrary to Connecticut tort law in that it vitiates the principles of proximate cause and comparative negligence. Indeed, if the plaintiff's conduct is so offensive to our public policy, let the defendant establish the plaintiff's conduct as a special defense and allow a jury to evaluate the nature of the wrongdoing. There are many instances involving a plaintiff's conduct that members of the community would no doubt find odious, such as drunk driving, but we do not bar plaintiffs who engage in such conduct from bringing an action in an attempt to justify their entitlement to damages to a jury. For example, if a drunk driver is stopped at a stop sign and subsequently rear-ended, our law allows the drunk driver to bring an action for damages. The defendant can establish the drunk driving as a special defense.

Second, the adoption of the wrongful conduct rule, under these circumstances, would create a body of law that is both inconsistent in its application and insufficient as a guide to trial courts confronted with the issue. For instance, when does a court decide that behavior is so wrongful that the action must be dismissed? Is it a matter for this court to decide on a case-by-case basis? How will a trial court know to dismiss a case in the future, unless the case involves child pornography?

Third, in my view, the ruling is contrary to an already established state policy allowing malpractice cases when the plaintiff has procured a good faith certificate letter pursuant to General Statutes § 52-190a. Indeed, if the legislature had intended for a certain class of people to have their malpractice actions barred even if they could establish malpractice, it could have easily set forth the barred class or classes in the statute. In this action, the plaintiff obtained a good faith certificate establishing malpractice, yet we are now depriving him of the opportunity of a trial by jury. In this case, the

plaintiff is claiming that his "habit" of viewing child pornography while he was a minor was not properly treated and that he still has the problem as an adult. What if a physician prescribed too much medication and, as a result, a person became addicted to drugs to the point that he or she either possessed or sold drugs? Would we now say that either the possession or sale of drugs is so wrongful that a malpractice action against the physician would not survive? Does the reasoning of our opinion today apply with equal force to all persons who have been unsuccessfully treated for an addiction to the point that, even where a health care professional is of the opinion that the medical professional in the case has violated professional standards, the conduct involved in the addiction is so "wrongful" there can be no cause of action? Have we now, in effect, created a new immunity for professionals involved in the treatment of individuals addicted to child pornography, drugs, gambling, alcohol, or a myriad of other addictions, because the conduct involved in those addictions is so wrongful? If not, how do we decide where the line is to be drawn? All of the conduct associated with such addictions is proscribed by state statute. Where does this court differentiate between the offensive conduct in violation of a state statute that prohibits a malpractice action and the offensive conduct in violation of a state statute that does not bar a malpractice action? I believe that we now enter an area known as the impenetrable "Serbonian bog" where the precise lines of legal jurisprudence are never clear. See *Matarazzo* v. *Rowe*, 225 Conn. 314, 318 n.3, 623 A.2d 470 (1993) (" '[a] gulf profound, as that Serbonian bog Betwixt Damiata and Mount Casius old, [w]here armies whole have sunk' "), quoting J. Milton, Paradise Lost, bk. 2, ll. 592–94. Rather, at any given time, the lines will change in the direction of the wind.

Fourth, assuming, arguendo, that the majority is correct in holding that Connecticut's public policy bars the plaintiff's claims related to the criminal investigation and prosecution, this complaint reads as a standard malpractice case with claims seeking damages for further medical bills and treatment as the result of the defendant's breach of the standard of care. In my view, regardless of whether the plaintiff should be barred from recovering for injuries arising from his criminal prosecution, the other claims should have survived the motion to strike. For these reasons, I cannot join the majority opinion and most respectfully dissent.

I

The majority's conclusion that the plaintiff's claims are barred because of the nature of his behavior runs contrary to the well established principles of our tort law. During the first part of the twentieth century we recognized that a person "is not barred of redress for an injury suffered by himself, nor liable for an injury

suffered by another, merely because he is a law-breaker." *Munroe* v. *Hartford Street Railway Co.*, 76 Conn. 201, 206, 56 A. 498 (1903). Thus, when the driver of a milk wagon left his horse and wagon unattended, in violation of a city ordinance, and the wagon was on the tracks of the defendant's railroad when it was subsequently struck by one of the defendant's cars being operated at a high rate of speed, we stated that "[i]n doing an unlawful act a person does not necessarily put himself outside the protection of the law." Id. This court further explained that "[i]n actions to recover for injuries not intentionally inflicted but resulting from a breach of duty which another owes to the party injured—commonly classed as actions for negligence—the fact that the plaintiff or defendant at the time of the injury was a lawbreaker may possibly be relevant as an incidental circumstance, but is otherwise immaterial unless the act of violating the law is in itself a breach of duty to the party injured in respect to the injury suffered." Id. Since 1890, this court recognized the fact that "the rule applicable to negligence and to illegal acts on the part of the plaintiff is precisely the same." *Broschart* v. *Tuttle*, 59 Conn. 1, 20, 21 A. 925 (1890). Further, in *Hoelter* v. *Mohawk Service, Inc.*, 170 Conn. 495, 503, 365 A.2d 1064 (1976), we stated that "[i]t may safely be stated that [a]ll authorities agree that plaintiffs in tort actions may so conduct themselves as to bar recovery for injuries suffered by them. This recovery-barring conduct, while given different labels, is ofttimes treated within the general concept of contributory negligence." (Internal quotation marks omitted.) "[T]he principles which determine the relation of the negligent conduct in the one case, or the illegal act in the other, to the resulting injury as a proximate cause, are the same." *Monroe* v. *Hartford Street Railway Co.*, supra, 207. Thus, the plaintiff's involvement in illegal activity did not bar recovery under contributory negligence when there was a lack of causation between the activity and the injuries. *Bagre* v. *Daggett Chocolate Co.*, 126 Conn. 659, 664–65, 13 A.2d 757 (1940) (participation in illegal bingo game did not preclude action against candy manufacturer for injuries sustained while eating candy); see also *Kurtz* v. *Morse Oil Co.*, 114 Conn. 336, 341–42, 158 A. 906 (1932) (minor decedent's conduct driving underage and without license did not preclude estate's recovery); 4 Restatement (Second), Torts § 889 (1979) (recovery not barred "merely because at the time of the interference he was committing a tort or a crime"). I see no reason why we should stray from these well established principles.

If the plaintiff brought about his own misfortune and was more than 50 percent negligent, the defendant would have been successful in establishing a special defense and a verdict would be rendered in favor of the defendant. To conclude that it was proper to grant a motion to strike because this court finds the plaintiff's

behavior so abhorrent that it violates the public policy of this state runs counter, in my view, to both the law of torts and principles of comparative negligence and proximate cause. In effect, the position adopted by the majority establishes that someone who engages in child pornography cannot bring an action against the therapist who treated him regardless of the nature of that treatment. Thus, in my view, the majority's position reverts this state to the old principle of contributory negligence, a doctrine which operated as a complete bar to recovery where the plaintiff was even 1 percent negligent. See *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 585, 657 A.2d 212 (1995). The majority is imposing its opinion of what is the public policy of this state, such that an otherwise valid malpractice case cannot be presented to the jury. In effect, the majority holds that the plaintiff's conduct must have been at least 51 percent negligent so that he could never recover under these circumstances.

Our legislature has, however, abolished the doctrine of contributory negligence and established the doctrine of comparative negligence, indicating that a plaintiff can still recover if he was even 50 percent negligent. See General Statutes § 52-572h (b). Nowhere in the comparative negligence statute, however, did the legislature determine that either certain types of conduct or certain classes of people would not be subject to the comparative negligence doctrine. The wrongful conduct rule adopted by the majority today undermines this system by shifting the responsibility for determining the nature of the conduct of the parties away from the jury. We are, in effect, as argued by the Connecticut Trial Lawyers Association in its amicus brief (amicus brief), simply reviving "the old doctrine of contributory negligence . . . under a pseudonym." This result conflicts with the policy and intent of our comparative negligence statute.

This result, in my view, inappropriately circumvents and frustrates the legislature's purposeful mandate to abolish those doctrines that result in a complete bar to recovery. In this ruling, we are establishing the public policy of the state for civil cases involving child pornography, when the legislature has proscribed the conduct as a crime, but has not proscribed the conduct in a civil action. In my view, when we engage in such a scattered approach to public policy considerations we are overreaching our boundaries and setting a dubious precedent.

It is axiomatic that causation is essential to any malpractice action. See *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 575, 864 A.2d 1 (2005). Proximate cause is determined by the substantial factor test—whether harm was "of the same general nature as the foreseeable risk created by the defendant's negligence." (Internal quotation marks omitted.) *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 124, 869 A.2d

179 (2005); see also *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 441 n.17, 820 A.2d 258 (2003). A plaintiff's conduct does not break the chain of causation unless it was unforeseeable. This is because criminal or tortious acts may be foreseeable and within the scope of risk created by a defendant's conduct. *Craig* v. *Driscoll*, 262 Conn. 312, 331–33, 813 A.2d 1003 (2003). Proximate cause is generally a factual determination for the jury. *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 321, 852 A.2d 703 (2004).

The majority correctly states that "[t]he trial court in this case did not address the issue of foreseeability, although it was raised as part of an alternative ground in the defendant's motion to strike. This court frequently has noted, however, that we are not required to address the [issue of] foreseeability if we determine, based on . . . public policy . . . that no duty of care existed. *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 218, 905 A.2d 1135 (2006); see also *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 529, 832 A.2d 1180 (2003); *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 618 n.11, 783 A.2d 462 (2001)." (Internal quotation marks omitted.)

In my view, it is important to analyze this quote in the context of the cases cited. *Neuhaus* was a medical malpractice case concerning the issue of whether the plaintiffs' complaints against the defendants were time barred, or whether the statute of repose was tolled with respect to either of the defendants by the continuing course of conduct doctrine. In that case, we held that "[g]iven the fact that [the plaintiff] ceased to be under [the defendants'] care subsequent to his birth, we agree with the Appellate Court's analysis and conclude that, as a matter of public policy, [the defendant] did not have a duty to warn [the plaintiff] of the known health risks flowing from a diagnosis of respiratory distress syndrome." *Neuhaus* v. *DeCholnoky*, supra, 280 Conn. 218. Thus, the question in *Neuhaus* was whether the court would impose a duty on the physician to warn the patient after the termination of the doctor-patient relationship.

Further, in *Ryan Transportation, Inc.*, the plaintiff did not allege any relationship with the defendant beyond that of their commercial cotenancy. We held that "[i]n light of our determination that there did not exist a relationship involving [the defendant's] custody of or control over the plaintiff that would warrant the imposition of a duty to protect the plaintiff from third party conduct, we need not address the issue of foreseeability." *Ryan Transportation, Inc.* v. *M & G Associates*, supra, 266 Conn. 529. Again, we looked to the nature of the initial relationship in order to determine the public policy consideration.

*Gomes* involved a claim against a hotel clerk and her employers for the clerk's actions in, as alleged,

negligently preventing a hotel guest from " 'rendering aid to the plaintiffs.' " *Gomes* v. *Commercial Union Ins. Co.*, supra, 258 Conn. 605. We held that, if we allowed such a cause of action, "we would be shifting the loss to parties who were not responsible for the plaintiffs' property damage. We note that our determination that public policy reasons militate against imposing a duty of care on the hotel defendants is a fact-bound determination and pertains only to the specific facts of this case." Id., 618. I note that *Gomes* cited, as authority for this conclusion, *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 572, 717 A.2d 215 (1998), a case in which this court concluded that an alarm company did not owe a duty to firefighters injured as a result of the transmission of a false alarm, and a case which, unlike *Gomes*, was determined by a jury. In *Lodge*, We noted that our conclusion that the "imposition of liability . . . would be unreasonable [was] not based on a conclusion that the defendants [were] entitled to immunity because of their socially beneficial function. Rather, it [was] a fact-bound determination based on the attenuation between the plaintiffs' harm and the defendants' conduct." Id., 585 n.16.

The foregoing cases demonstrate that the duty under consideration is the initial duty which may or may not be owed to the plaintiff. In my view, in the present case, there can be no question that during the years the defendant was treating the plaintiff, while the plaintiff was a minor, the defendant owed the plaintiff a duty to render his services pursuant to the applicable standard of care. The fact that the plaintiff suffered consequences years later after the alleged breach of that duty, does not change the fact that the initial duty existed. The majority certainly cannot contest the fact that the defendant, a licensed clinical social worker, owed a duty to the plaintiff during the treatment period. The majority's conclusion that, "in the present case, the defendant owed the plaintiff no duty" due to public policy considerations becomes particularly problematic when the public policy considerations do not address this initial treatment, but rather the later conduct.

I also wonder why, if the prior decisions of this court cited by the majority constantly emphasize that the public policy considerations were fact-based determinations based upon the peculiar facts of the individual cases, we are not waiting for a jury or fact finder to determine the facts, instead of deciding those cases on the underdeveloped record of either a motion to strike or a summary judgment?

In my view, it is unnecessary for this court to adopt the wrongful conduct rule. Whether a plaintiff's illegal or wrongful conduct will limit a defendant's liability to foreseeable and reasonable bounds is already part of Connecticut's proximate cause analysis. See *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 440–41.

In the context of medical malpractice, this court addressed the issue of a physician's liability for a patient's suicide in *Edwards* v. *Tardif*, 240 Conn. 610, 692 A.2d 1266 (1997). Some may argue that the act of suicide is both intentional and wrongful. This court held in *Edwards*, however, that liability exists if the suicide is a foreseeable risk or falls within the general scope of risk created by the failure to follow the requisite standard of care. Id., 618 n.7. We also noted in *Edwards* that "we have recently adopted the standard set forth in § 442B of the Restatement [(Second) of Torts] that [w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing the harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct." (Internal quotation marks omitted.) Id., 617. We further opined that "[p]hysicians have a duty to exercise the degree of care that physicians in that particular field would exercise in similar circumstances. If the physician's treatment of the patient falls below the relevant standard of care, liability may be imposed if it is reasonably foreseeable that suicide will result if such care is not taken. Accordingly, we hold that a physician may be liable for a patient's suicide when the physician knew or reasonably should have known of the risk of suicide and the physician's failure to render adequate care and treatment proximately causes the patient's suicide." Id., 618.

The wrongful conduct rule effectively negates the *Edwards* holding. It focuses solely upon the plaintiff's conduct thereby completely ignoring the scope of risk analysis incorporated in Connecticut's causation law. I see little difference between our holding in *Edwards* and the situation in this case. The plaintiff has already obtained an opinion from a similar health care provider that the defendant "appears to have committed medical negligence by failing to meet the standard of care required of a [l]icensed [c]linical [s]ocial [w]orker." Therefore, if it was reasonably foreseeable that the plaintiff would continue to engage in the conduct of viewing child pornography, the health care professional could be found liable. This is a jury determination. The rule adopted by the majority suggests that, because the plaintiff's conduct was against public policy, he cannot win regardless of the culpability of the health care professional by whom he was treated. Our ruling, in my view, is tantamount to rewriting § 52-190a and has the effect of overruling, sub silentio, *Edwards*.

II

I also disagree with the holding of the majority opinion because I think that the wrongful conduct rule is ill suited to tort actions and does not provide adequate

guidance to trial courts. Commentators have described the wrongful conduct rule as a "barbarous relic of the worst there was in puritanism." F. Harper et al., Torts (2d Ed. 1986) § 17.6, pp. 617–18. Its resurrection has been further condemned as follows: "[M]oral indignation must not be mistaken for public policy. . . . The obscure equitable doctrine ex turpi causa non oritur actio should not be used in a misguided attempt to blunt the litigation crisis in the United States or other western common-law nations. . . . The law—and tort law especially—does not distribute compensation based on who is a good person and who is not. The ex turpi causa defense blurs the lines between our gut hesitation to aid a wrongdoer and the more important public policies underlying tort law, allowing the former to exert undue influence. The doctrine leads the courts to focus improperly upon the punctilios of the plaintiff rather than the public policy factors that should underlie a reasoned assignment of legal responsibility." (Footnotes omitted; internal quotation marks omitted.) R. Prentice, "Of Tort Reform and Millionaire Muggers: Should An Obscure Equitable Doctrine Be Revived To Dent the Litigation Crisis?" 32 San Diego L. Rev. 53, 132–33 (1995). "The serious misconduct doctrine operates not to produce predictability and certainty, but perversely to inject chaos into the process and provide fertile ground for exploitation and abuse." J. King, "Outlaws and Outlier Doctrines: The Serious Misconduct Bar in Tort Law," 43 Wm. & Mary L. Rev. 1011, 1018 (2002). "[A]s a freestanding doctrine, [it] lurks like a rusting old tool in the crawl space beneath the core tort elements and defenses. One is never quite sure what its standing is or when its archaic blade will next appear to dispatch a tort claim." Id., 1063.

As set forth aptly in the amicus brief, several reasons have been asserted as a basis for the rationale behind the wrongful conduct rule, namely, that permitting such actions would: (1) condone and encourage criminal conduct; (2) allow the wrongdoer to profit from criminal conduct; (3) render the legal system as a mockery of justice; and (4) allow wrongdoers to shift responsibility for the illegal acts on to other parties. In my view, these reasons are not persuasive.

Adoption of the rule as a deterrent to criminal conduct is unrealistic. The rule's application has been so unpredictable that "no reasonable claim that ex turpi causa will deter criminal action by plaintiffs can be credibly made." R. Prentice, supra, 32 San Diego L. Rev. 114. Indeed, "most persons engaging in criminal conduct do not expect to be injured in the process, at least not by negligence, and therefore would seldom be influenced by the thought of being barred from suing." J. King, supra, 43 Wm. & Mary L. Rev. 1045. Also, barring tort recovery seems inconsequential when compared to the deterrent effect of potential criminal sanctions. Id. Consequently, the threat of criminal penalties serves

as a more effective deterrent for criminal conduct and, therefore, the wrongful conduct rule does not add any deterrent effect.

Likewise, "[t]he 'may not profit' rationale is conclusory and unconvincing." Id., 1044. Barring recovery does not prevent a plaintiff from profiting from wrongdoing. The basic purpose of tort law is "to restore an injured party to the position he or she would have been in if the wrong had not been committed." (Internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 248, 905 A.2d 1165 (2006). As correctly noted in the amicus brief, "there is no profit when one is simply made whole . . . ." (Internal quotation marks omitted.)

"Simply put, the moral characteristics of the parties before a court have little or no relevance to that court's capacity to do justice or injustice." R. Prentice, supra, 32 San Diego L. Rev. 122. Allowing a victim who was engaged in illegal or wrongful conduct to receive compensation due to injuries sustained through the negligence of another does not taint the judicial process any more than when a criminal's conviction is overturned. Id. Barring an alleged plaintiff's negligence action, however, contaminates the court system by conferring immunity on a tortfeasor merely because the tort was done to someone engaged in illegal or wrongful conduct. See J. King, supra, 43 Wm. & Mary L. Rev. 1048. As stated in the amicus brief, "[t]his is especially true when a defendant's negligent conduct proximately causes the plaintiff's injury by creating, or increasing, the risk of foreseeable harm, despite the plaintiff's illegal or wrongful conduct. [The doctrines of both] proximate cause and comparative negligence serve to limit a wrongdoer's ability to completely shift responsibility to others. The [wrongful] conduct rule does not operate within this modern network. See, e.g., *Sonoran Desert Investigations, Inc.* v. *Miller*, [213 Ariz. 274, 281, 141 P.3d 754 (App. 2006)]. The rule's ultimate purpose is to bar recovery. It does so by unjustifiably concentrating solely on the plaintiff's fault contrary to our legislative scheme." Therefore, I categorically reject the rationale for the rule as being neither cogent nor in accord with our state statutes. Where do we go from here? Is this court to become the arbiter on a case-by-case basis when conduct is so wrongful that a plaintiff should not recover as a matter of public policy? At the very least, should not the conduct relate to the claimed negligence? I fear that we are opening the door to a doctrine that will lead to inconsistent and, at times, unexplainable results.

Eleven other states have adopted the wrongful conduct rule in some form. Some of these states have enacted statutes implementing the rule. For instance, in California, pursuant to the personal responsibility act codified in § 3333.3 of the California Civil Code (Deering 2005), convicted felons are precluded from

recovering in negligence actions for injuries "in any way proximately caused" during the commission of a felony or during flight thereafter. See *Jenkins* v. *Los Angeles*, 74 Cal. App. 4th 524, 527, 88 Cal. Rptr. 2d 149 (1999). Additionally, § 3333.4 of the California Civil Code (Deering 2005) bars noneconomic, and other non-pecuniary damages in automobile accidents if a plaintiff is operating under the influence of drugs or alcohol, or owned or operated a vehicle without proper insurance or proof of financial responsibility. Oregon has also enacted a statutory defense barring recovery in personal injury or death actions when the plaintiff was engaged in a specific criminal activity. Or. Rev. Stat. § 31.180 (2013) (aggravated murder, murder, or class A or B felony). A few of the other states would bar an action "to those injured in the course of committing a serious criminal act . . . ." (Citation omitted; internal quotation marks omitted.) *Izzo* v. *Manhattan Medical Group, P.C.*, 164 App. Div. 2d 13, 18, 560 N.Y.S.2d 644 (1990); see *Oden* v. *Pepsi Cola Bottling Co. of Decatur, Inc.*, 621 So. 2d 953, 955 (Ala. 1993) (public policy rule bars actions "that were a direct result of the injured party's knowing and intentional participation in a crime involving moral turpitude"); *Rimet* v. *Mortell*, 680 N.E.2d 867, 874 (Ind. App.) (plaintiff's criminal conduct resulting in conviction bars plaintiff from imposing liability on others), transfer denied, 690 N.E.2d 1185 (Ind. 1997); *Izzo* v. *Manhattan Medical Group, P.C.*, supra, 18 (fact that decedent drug addict forged prescription did not automatically bar wrongful death claim against pharmacy under wrongful conduct rule because plaintiff "lacked the capacity to know that it was wrong to forge prescriptions"); *Feltner* v. *Casey Family Program*, 902 P.2d 206, 208–10 (Wyo. 1995) (public policy precludes plaintiff from recovering injuries sustained as direct result of serious violation of law). I note that Alabama still adheres to the contributory negligence doctrine as a complete bar to recovery. See *Ex parte Goldsen*, 783 So. 2d 53, 56 (Ala. 2000). Further, in Indiana, contributory negligence bars a medical malpractice case against a physician. *Cavens* v. *Zaberdac*, 849 N.E.2d 526, 528 n.2 (Ind. 2006).

Unquestionably, under the facts of this case, the doctrine would not apply in many of these states, particularly the cases cited by the majority, because there is no allegation that the claimed injuries occurred while the plaintiff was in the course of committing a crime. The complaint alleges that the plaintiff's house was searched and that he was waiting to hear if he was going to be arrested, and what would happen to him if he were found guilty. It further states that he will incur medical bills in the future. There is no claim for damages as the result of injuries sustained during the commission of a crime. Moreover, at least in the states that have proscribed the action by way of statute, the statute provides clear guidance and a defined public policy as

adopted by the legislature. In this case, although the conduct is clearly illegal, we have no clearly defined public policy by way of statute, ordinance, or regulation to the effect that the plaintiff cannot either recover or at least bring a civil action.

I note that in the context of labor arbitration proceedings, when we search for a well-defined state public policy we look to criminal statutes, noncriminal statutes, city charters, professional conduct regarding attorneys, and administrative regulations. We have stated, however, that "[r]ather than requiring that public policy to be grounded on a particular type of source, however, in determining whether a party has satisfied its burden of demonstrating the existence of a well-defined public policy, we have instead focused our inquiry on whether the alleged public policy is in fact clearly discernible in the purported source." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 838, 6 A.3d 1142 (2010); see also *State* v. *AFSCME, Council 4, Local 391*, 309 Conn. 519, 526–27, 69 A.3d 927 (2013). In my view, this is a matter for the legislature and this court should not be engaged in proscribing certain actions on a case-by-case basis, especially when there is no clearly defined public policy contained in any source that would bar civil actions under the facts of this case.

The rule adopted by the majority is particularly harsh in the sense that it imposes an additional civil penalty— namely, not being able to bring an action and recover damages—on the already existing statutory scheme of criminal sanctions. This outcome has been criticized as severe because it results in unequal punishment. See R. Prentice, supra, 32 San Diego L. Rev. 116–18. Because the rule's bar to recovery is not necessarily dependent upon the degree of illegal or wrongful conduct, unequal civil penalties can arise from identical misconduct. The rule also operates without the traditional criminal system safeguards. "It is questionable indeed whether it is wise for the courts to assume the responsibility of imposing such a sanction when the legislature has not seen fit to do so." F. Harper et al., supra, § 17.6, p. 618.

III

The majority's holding runs contrary to § 52-190a. Section 52-190a (a) provides in relevant part that: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial plead-

ing or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ." There is no provision in this statute barring certain classes of plaintiffs who may have engaged in certain misconduct. According to the terms of the statute, if there is a good faith belief on the part of the attorney or claimant and a good faith certificate is attached, the claimant can pursue his action. In my view, this statute represents the public policy of the state regarding malpractice actions. We should not be rewriting the statute to say that even if a person qualifies under the terms of the statute, that person cannot bring an action if he or she has engaged in the wrongful conduct of viewing child pornography. If the legislature wishes to bar certain classes from the coverage of the statute, it certainly knows how to insert the appropriate language. As we have frequently stated, "it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly; e.g., *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 729, 6 A.3d 763 (2010); or to use broader or limiting terms when it chooses to do so. See, e.g., *Stitzer* v. *Rinaldi's Restaurant*, 211 Conn. 116, 119, 557 A.2d 1256 (1989)." *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183, cert. denied,    U.S.   , 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012).

IV

Assuming, arguendo, that the majority is correct in holding that the plaintiff's wrongful conduct should bar this claim, a proposition which I obviously oppose, there is an additional allegation that has not been considered. The majority acknowledges that "[a]lthough the complaint contains a single allegation that, because of the defendant's negligence, the plaintiff has and will incur costs for mental health care necessary to his recovery and maintenance, he has made clear in his submissions to the trial court and this court that he is not advancing a negligence claim independent of his illegal conduct." Respectfully, I disagree with the characterization. In my view, the plaintiff is not seeking damages for the legal consequences of his criminal acts. He is seeking damages because the defendant's alleged

negligent treatment failed to address his "habit" of viewing child pornography. It is axiomatic that he would have to establish, at trial, that this negligence was the proximate cause of any of his claimed damages. As the majority indicates, the facts alleged in the plaintiff's amended complaint "are deemed admitted for purposes of ruling on a motion to strike. See *Murillo* v. *Seymour Ambulance Assn., Inc.*, 264 Conn. 474, 476, 823 A.2d 1202 (2003)." "A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . [The court takes] the facts to be those alleged in the [pleading] . . . and . . . construe[s] the [pleading] in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the [pleading] would support a cause of action [or special defense], the motion to strike must be denied." (Internal quotation marks omitted.) *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 117–18, 889 A.2d 810 (2006).

The plaintiff alleges, in his amended complaint dated June 15, 2011, several grounds of negligence against the defendant. He then alleges the following: "(13) The plaintiff . . . faces being sentenced to a term of imprisonment, serving a period of probation, registering as a sex offender . . . and suffering the humiliation, publicity, embarrassment and economic repercussions . . . . (15) As a consequence of the negligence and carelessness of the defendant . . . the plaintiff . . . has been the target of a [police] raid and search of his home and seizure of computers, cell phones and other electronic devices. (16) As a consequence of the negligence and carelessness of the defendant . . . the plaintiff . . . has incurred and in the future will be forced to spend large sums of money for professional mental health care including therapy and prescription drugs necessary for his recovery and maintenance." Clearly, paragraphs 13 and 15 relate to the conduct that the majority classifies as "wrongful." Paragraph 16 is, however, a standard allegation in a malpractice action. It can survive on its own, even if the court rules that the wrongful conduct rule applies. The plaintiff reaffirms this allegation in his brief when he states: "The plaintiff has alleged as damages the need for ongoing therapy, medications, humiliation, and emotional distress." The fact that the prime focus of the plaintiff's argument was related to the question of the "wrongful conduct" should not prevent us from examining the entire complaint and making a determination about the separate allegations claimed as damages. Essentially, the complaint would then read, if the offending paragraphs were removed, that the defendant committed negligence and the plaintiff has to undergo additional treatment and incur bills as a result thereof. I see no reason why this entire cause of action should be stricken.

My opinion is buttressed by our law as it relates to motions to strike. "The function of a motion to strike

is to test the legal sufficiency of a pleading, it admits all facts well pleaded. See Practice Book § [10-39]. The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 378, 698 A.2d 859 (1997). Further, "[i]f any facts provable under the express or implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." *Bouchard* v. *People's Bank*, 219 Conn. 465, 471, 594 A.2d 1 (1991). Upon examination of the entire complaint, in my view, paragraph 16, when coupled with the negligence count contained in paragraph 14, states a valid cause of action for medical malpractice. The allegation contained in paragraph 16 has no relationship to the "wrongful conduct" which the majority holds violates the public policy of our state. My view is supported by the fact that we are obliged to construe the complaint in favor of the plaintiff, to determine whether the pleading party has stated a cause of action. In my view, regardless of the wrongful conduct allegations, the entire complaint should not have been stricken because paragraphs 14 and 16 state a valid malpractice claim for which the plaintiff submitted a good faith certificate and opinion letter.

For all of the foregoing reasons, I would reverse the judgment of the trial court, deny the defendant's motion to strike, and allow this case to proceed to a jury trial. Accordingly, I respectfully dissent.

---